**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

BILLIE RODRIGUEZ, DANIEL ERWIN,
MICHAEL B. ACKERMAN, KYLE FOREMAN,
DREW SCRUGGS, MARY JANE MCQUEENY,
EMILY THORPE, JENNIFER TRITT and THE
BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF FORD, individually and on
behalf of all others similarly situated,

      Plaintiffs,

vs.

EXXON MOBIL CORPORATION, CHEVRON
USA INC., CHEVRON PHILLIPS CHEMICAL
CORPORATION, DUPONT de NEMOURS, INC.,
CELANESE CORPORATION, DOW INC.,
DOW CHEMICAL COMPANY, DUPONT
CORPORATION, EASTMAN CHEMICAL
COMPANY, LYONDELLBASELL INDUSTRIES
N.V., and AMERICAN CHEMISTRY COUNCIL,

      Defendants,

and

STATE OF KANSAS, *ex rel.*
KRIS W. KOBACH, Attorney General,

      Defendant-Intervenor.

Case No. 4:24-cv-00803-SRB

**ORAL ARGUMENT REQUESTED**

**SUGGESTIONS IN SUPPORT OF**
**KANSAS'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

BACKGROUND ..................................................................................................... 1

LEGAL STANDARD ............................................................................................. 2

ARGUMENT ........................................................................................................... 3

    I.    **Ford County's *parens patriae* claims threaten State sovereignty.** ........................... 4

        a.    ***Parens patriae* authority is exclusively reserved to sovereigns—the States.** ............................................................................................................... 4

        b.    **Political subdivisions—like Ford County—lack the sovereign power necessary to assert *parens patriae* claims.** ................................................... 5

        c.    **Ford County also fails to meet traditional standing to assert its class allegations on behalf of the general welfare of all Americans.** ................................. 8

    II.    **Ford County's class allegations must be dismissed because Ford County is not the real party in interest.** ....................................................................................... 9

        a.    **Kansas law determines the real party in interest.** ........................................ 9

        b.    **Kansas law designates the State as the real party in interest and vests statewide authority in the attorney general.** ............................................................. 10

        c.    **Ford County's "home rule power" ends at the county line.** ......................... 12

        d.    **Ford County's class allegations are an improper exercise of sovereign authority and face insurmountable class certification issues.** ............................... 12

    III.    **Although Ford County flees Kansas for a better forum, this District is not the proper venue.** ............................................................................................................ 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Alden v. Maine*, 527 U.S. 706 (1999) ............................................................................ 4

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982) ........ 3, 4, 5, 6, 10

*Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991 (8th Cir. 2012)............. 9

*Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188 (D. Kan.) ................................. 10

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013)......................... 3

*Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs*, 718 P.2d 235 (Colo. 1986)............................................................................................................................ 6

*Bd. of Cnty. Comm'rs of Cnty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181 (D. Colo. 2007)................................................................................................... 7

*Bd. of Cnty. Comm'rs v. Lewis*, 203 Kan. 188 (1969) .................................................... 6

*Bd. of Cnty. Comm'rs v. Nielander*, 275 Kan. 257 (2003) ........................................... 12

*Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775 (1991) ...................... 5

*Bredberg v. Long*, 778 F.2d 1285 (8th Cir. 1985) ........................................................ 14

*Brown v. Home Ins. Co.*, 176 F.3d 1102 (8th Cir. 1999)................................................. 9

*Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016) ....................................... 2, 3, 8

*City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389 (1978) ................................... 6

*Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40 (1982) ......................................... 6

*Cnty. of Dorchester v. AT&T Corp.*, 407 F. Supp. 3d 561 (D.S.C. 2019).................... 13

*Consul Gen. of Republic of Indon. v. Bill's Rentals, Inc.*, 330 F.3d 1041 (8th Cir. 2003) ............ 3

*Cunningham v. Blythe*, 127 P.2d 489 (1942)................................................................... 7

*Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080 (8th Cir. 2021) ................... 14

*Dorman v. Emerson Elec. Co.*, 23 F.3d 1354 (8th Cir. 1994) ......................................... 9

*Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468 (8th Cir. 1993) ....................... 2

*Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356 F.2d 718 (8th Cir. 1966)............ 9

*Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004) .......................................... 12

*Garcia v. Johanns*, 444 F.3d 625 (D.C. Cir. 2006)...................................................... 14

*Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004)..................... 8

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .................................................. 13

*Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876 (8th Cir. 2015) ................... 3

*Greater Heights Acad. v. Zelman*, 522 F.3d 678 (6th Cir. 2008) ................................... 6

*Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991) ............................................................................................................................ 7

*Illinois v. Associated Milk Producers, Inc.*, 351 F. Supp. 436 (N.D. Ill. 1972) ........................... 11

*In re Bozic*, 888 F.3d 1048 (9th Cir. 2018) ................................................................................. 14

*Kan. City Breweries Co. v. Kansas City*, 96 Kan. 731 (1915) ...................................................... 11

*Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1 (1890) ...................................................................................................................................... 4

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005) ........................................................................... 3

*Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868 (8th Cir. 2015) ........................................ 5

*Magallon v. Livingston*, 453 F.3d 268 (5th Cir. 2006) .................................................................. 3

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) ............................................................................... 5

*Mecklenburg Farm v. Anheuser-Busch, Inc.*, 250 F.R.D. 414 (E.D. Mo. 2008) ............................ 3

*Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79 (D. Kan. 2024) ......................................... 14

*Missouri v. Nat'l Org. for Women, Inc.*, 467 F. Supp. 289 (W.D. Mo. 1979) ............................... 10

*Mo. Coal. for Env't Found. v. Wheeler*, No. 2:19-CV-4215-NKL, 2020 WL 2331201 (W.D. Mo. May 11, 2020) ........................................................................................................................ 6

*Mountain States Legal Found. v. Costle*, 630 F.2d 754 (10th Cir. 1980) ..................................... 11

*Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981) ......................................... 11

*New Jersey v. New York*, 345 U.S. 369 (1953) ........................................................................... 5, 8

*Off. of the People's Couns. for D.C. v. D.C. Water & Sewer Auth.*, 313 A.3d 579 (D.C. 2024) . 11

*Puerto Rico v. Cordeco Dev. Corp.*, 534 F. Supp. 612 (D.P.R. 1982) ......................................... 11

*Renne v. Geary*, 501 U.S. 312 (1991) ........................................................................................... 2

*Reynolds v. Sims*, 377 U.S. 533 (1964) ................................................................................... 5, 6, 7

*Ronsick v. Phariss*, 286 F.2d 316 (10th Cir. 1960) ...................................................................... 3

*Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267 (4th Cir. 1980) .................................................. 13

*State ex rel. Stephan v. Brotherhood Bank & Tr. Co.*, 8 Kan. App. 2d 57 (1982) ........................ 8

*Stubbs v. McDonald's Corp.*, 224 F.R.D. 668 (D. Kan. 2004) ..................................................... 13

*Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795 (10th Cir. 2011) ........................................... 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................................................................... 8

*Warren Cnty. v. North Carolina*, 528 F. Supp. 276 (E.D.N.C. 1981) .......................................... 7

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................................................... 3

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III., § 2 ................................................................................................................. 2

## STATUTES

15 U.S.C. § 15c ................................................................................................................ 12

28 U.S.C. § 1391 ......................................................................................................... 3, 14

K.S.A. 19-101 ......................................................................................................... 12, 13

K.S.A. 19-101a ................................................................................................. 1, 7, 9, 12

K.S.A. 19-101c ............................................................................................................. 12

K.S.A. 19-212 ................................................................................................................. 7

K.S.A. 19-247 ............................................................................................................... 13

K.S.A. 19-702 ............................................................................................................... 13

K.S.A. 19-703 ............................................................................................................... 13

K.S.A. 19-723 ............................................................................................................... 13

K.S.A. 50-109 ............................................................................................................... 10

K.S.A. 50-628 ............................................................................................................... 10

K.S.A. 60-908 .......................................................................................................... 7, 10

K.S.A. 75-702 ............................................................................................................... 10

## RULES

Fed. R. Civ. P. 8 ......................................................................................................... 2, 3

Fed. R. Civ. P. 12(b)(3) ................................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 13

Fed. R. Civ. P. 12(f) ..................................................................................................... 13

Fed. R. Civ. P. 17 ...................................................................................................... 9, 12

Fed. R. Civ. P. 23(d) .................................................................................................... 13

## OTHER AUTHORITIES

14D Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3827 ............... 14

6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1554 .................... 3

Nora Freeman Engstrom & Robert L. Rabin, Pursuing Public Health Through Litigation: Lessons from Tobacco and Opioids, 73 Stan. L. Rev. 285 (2021) ............................................. 2

Restatement (Second) of Conflicts of Laws § 145 ...................................................... 9

Restatement (Second) of Torts § 821C .......................................................................... 11

## INTRODUCTION

Political subdivisions are creations of the State, not independent sovereigns. Ford County's attempt to represent a nationwide class of States and other governmental entities usurps State sovereignty and inverts established legal principles. Disguised as a class action, this suit improperly seeks to exercise *parens patriae* authority, a power reserved exclusively to the States. But Kansas and federal law vest the attorney general with *sole authority* to litigate claims affecting statewide public health and welfare.

While Ford County has "home rule authority" to sue and be sued under K.S.A. 19-101a(a), its class allegations go beyond the permissible. Therefore, the Kansas Attorney General intervened to protect Kansas's sovereign interests and prevent foreclosure of Kansas's possible claims against the Plastics Defendants.[1] *See* (Docs. 81, 85.)

Kansas seeks dismissal of Ford County's class allegations on three grounds: (1) Ford County lacks standing to exercise *parens patriae* authority; (2) Kansas (and the other respective States) is the real party in interest; and (3) this District is not the proper venue for the purported Ford County claims. Accordingly, this Court should dismiss Ford County's class allegations.

## BACKGROUND

Plaintiffs allege the Plastics Defendants engaged in a decades-long campaign of deception about the recyclability of plastic products, leading to increased plastic production, consumption, and waste. This allegedly caused a public nuisance, unspecified environmental harm, inflated plastics costs, and unspecified waste management operational costs. Plaintiffs are

---

[1] Exxon Mobil Corporation, Chevron USA Inc., Chevron Phillips Chemical Corporation, DuPont De Nemours, Inc., DuPont Corporation, Celanese Corporation, Dow Inc., The Dow Chemical Company, Eastman Chemical Company, LyondellBasell Industries N.V., and The American Chemistry Council. (Doc. 48, ¶¶ 24-33.)

1

an unconnected group of individual consumers *and Ford County* seeking to force the Plastics Defendants to "repay the consumers, cities, counties, and others that they lied to." (Doc. 48, ¶ 8.)

Ford County, as a named plaintiff, impossibly seeks to represent all individual consumers and all governmental entities in pursuit of "a national, 50-state solution" to hold the Plastics Defendants accountable for their "nationwide scheme." (Doc. 48, ¶¶ 7-8, 161-64.) Drawing inspiration from the States' attorneys general successful litigation against Big Tobacco and opioid manufacturers,[2] Ford County aims to "stamp out" the Plastics Defendants' alleged misconduct and finally end their nationwide "campaign of deception." (Doc. 48, ¶¶ 7, 9.)

Ford County's allegations raise complex issues of standing, *parens patriae* authority, federalism, and the balance of power between the States and their political subdivisions. To protect State sovereignty, this Court should dismiss Ford County's class allegations.

## <u>LEGAL STANDARD</u>

Federal courts have limited jurisdiction. U.S. Const. art. III., § 2; *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). And because they presumptively lack jurisdiction, the plaintiff must "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (cleaned up); *see also* Fed. R. Civ. P. 8(a)(1).

A Rule 12(b)(1) motion facially or factually challenges the Court's subject-matter jurisdiction and requires the plaintiff to clearly show legal standing. *Carlsen*, 833 F.3d at 908; *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993). A plaintiff must show both constitutional standing and prudential standing. *See Glickert v. Loop Trolley Transp.*

---

[2] *See, e.g.*, Nora Freeman Engstrom & Robert L. Rabin, *Pursuing Public Health Through Litigation: Lessons from Tobacco and Opioids*, 73 Stan. L. Rev. 285 (2021) (contrasting successful attorneys general suits in tobacco and opioid litigation against much less successful individual class actions and political subdivision suits).

*Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015); *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Sovereign entities may uniquely satisfy the constitutional standing burden as *parens patriae* when their action relates to a "quasi-sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982).

A Rule 12(b)(6) motion challenges the plausibility of the plaintiff's claims, including whether the plaintiff is the real party in interest under Rule 17(a). *See Carlsen*, 833 F.3d at 910; *see also* Fed. R. Civ. P. 8(a)(2). Rule 17(a) requires an action be prosecuted in the name of the real party in interest, which is determined by state law in diversity cases. *Consul Gen. of Republic of Indon. v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir. 2003). If the plaintiff is not the real party in interest, courts often treat a Rule 17(a) objection like a Rule 12(b)(6) motion. *See, e.g.*, *Magallon v. Livingston*, 453 F.3d 268, 271 (5th Cir. 2006).[3]

A Rule 12(b)(3) motion challenges venue. All civil actions must be brought in a proper federal district court under 28 U.S.C. § 1391(b) unless otherwise permitted by law. Fed. R. Civ. P. 12(b)(3); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). If the case does not fall within § 1391(b), "venue is improper, and the case must be dismissed or transferred[.]" *Atl. Marine Const. Co.*, 571 U.S. at 56.

## ARGUMENT

Ford County claims to be the best representative of *every* State, state agency, county, city, and other political subdivision in the country (except California).[4] This is absurd and false. By

---

[3] *See also Ronsick v. Phariss*, 286 F.2d 316, 318 (10th Cir. 1960) (affirming dismissal with prejudice of wrong party but modifying judgment to dismissal without prejudice for real party in interest); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005) (noting Rule 17(a) does not address "federal-court subject-matter jurisdiction"); 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1554 (3d ed. June 2024 update); *but see Mecklenburg Farm v. Anheuser-Busch, Inc.*, 250 F.R.D. 414, 417 (E.D. Mo. 2008) (treating a Rule 17(a) objection as a "prudential limitation" under Rule 12(b)(1)).

[4] Excluding the "State of California and all cities, counties, and municipalities within." *See, e.g.*, (Doc. 48, at ¶ 161.d.)

excluding California and mimicking that State's legitimate exercise of *parens patriae* authority,[5] Ford County essentially admits it is attempting to exercise authority it lacks under both common and statutory law. Ford County's impermissible class allegations undermine the sovereignty of every State in the Union. The Court should dismiss Ford County's class allegations because Ford County lacks standing and authority to sue on behalf of all State sovereigns and their instrumentalities.

Although cloaked as a class action, Ford County tries to commandeer claims exclusively reserved to sovereign States, the end result of which would gravely disrupt the sacred balance of a State's position in the federal system. Further, venue is improper in this Court because Ford County is not located in—and none of its allegations occurred in—this District. Its forum shopping only underscores its *ultra vires* conduct. This Court should see Ford County's conduct for what it is—an unlawful power grab by a political subdivision—and cut it off now.

## I.      Ford County's *parens patriae* claims threaten State sovereignty.

Ford County's attempt to bring *parens patriae* claims is an *ultra vires* act that undermines State sovereignty. As a political subdivision, Ford County lacks the sovereign authority required to bring its claims on behalf of all individual consumers and all governmental entities. Therefore, this Court lacks subject-matter jurisdiction over Ford County's class allegations.

### a.      *Parens patriae* authority is exclusively reserved to sovereigns—the States.

The long-held common law doctrine of "*parens patriae*" is "inherent in the supreme power of every State." *Snapp*, 458 U.S. at 600 (quotation marks omitted); *Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 57 (1890) ("The state, as a sovereign, is the *parens patriae*."); *Alden v. Maine*, 527 U.S. 706, 713-14 (1999) (noting

---

[5] *See, e.g.*, *California ex rel. Bonta v. Exxon Mobil Corp.*, No. CGC-23-609134 (S.F. Super. Ct. filed Sept. 23, 2024).

"[a]ny doubt regarding the constitutional role of the States as sovereign entities is removed by the Tenth Amendment" (cleaned up)).

The nation's history and tradition dictate this sacred balance of sovereignty shared between the federal government and state governments. "[T]he States entered the federal system with their sovereignty intact" and "the judicial authority in Article III is limited by this sovereignty." *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) (cleaned up). Because a State "surrenders certain sovereign prerogatives" when it enters the Union, the State is entitled to "special solicitude in [the] standing analysis." *Massachusetts v. E.P.A.*, 549 U.S. 497, 519 (2007).

To exercise its sovereignty and establish standing, a State must assert its "quasi-sovereign" interest. *Snapp*, 458 U.S. at 600-01; *Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 872 (8th Cir. 2015). Although a quasi-sovereign interest does not have an "exact definition[,]" the *Snapp* Court grouped quasi-sovereign interests in two historical categories. *Snapp*, 458 U.S. at 601. *First*, a State has a quasi-sovereign interest in the "health and well-being" of its residents, which includes statewide public nuisances, and *second*, it has an interest in not being "discriminatorily denied its rightful status within the federal system." *Id*. at 607.

### b. Political subdivisions—like Ford County—lack the sovereign power necessary to assert *parens patriae* claims.

The Supreme Court has emphasized the inherent principle in "sovereign dignity" that only States, *as sovereigns*, represent the interests of all their citizens, the State itself, and the State's political subdivisions. *New Jersey v. New York*, 345 U.S. 369, 372-73 (1953). Political subdivisions are subordinate governmental entities, so they lack sovereignty and the accompanying *parens patriae* authority. *See Reynolds v. Sims*, 377 U.S. 533, 575 (1964) (political subdivisions "never were and never have been considered as sovereign entities" and

instead are "subordinate governmental instrumentalities"); *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 412 (1978) ("States' subdivisions generally have not been treated as equivalents of the States themselves"); *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 54 (1982) ("We are a nation not of city-states but of States" (quotation marks omitted)); *Mo. Coal. for Env't Found. v. Wheeler*, No. 2:19-CV-4215-NKL, 2020 WL 2331201, at *9 (W.D. Mo. May 11, 2020) (noting political subdivisions are not sovereigns and lack *parens patriae* authority).

Because political subdivisions are only "mere instrumentalities of the state," they can only exercise the powers vested in them by the State. *See Bd. of Cnty. Comm'rs v. Lewis*, 203 Kan. 188, 191 (1969); *Reynolds*, 377 U.S. at 575; *Greater Heights Acad. v. Zelman*, 522 F.3d 678, 680 (6th Cir. 2008) ("Being a subdivision of the state, the State may withhold, grant or withdraw powers and privileges from [a political subdivision] as it sees fit." (cleaned up)); *Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 241 (Colo. 1986) ("[C]ounties, unlike states, are not independent governmental entities existing by reason of any inherent sovereign authority of their residents.").

Without any authority, Ford County seeks "a national, 50-state solution, to stamp out [the Plastics Defendants'] scheme." (Doc. 48, at ¶ 7.) To accomplish its "50-state solution," Ford County "bring[s] this suit on [its] own behalf and on behalf of a proposed class of" *all governmental entities* and their citizens. (Doc. 48, at ¶¶ 161-64.) Ford County's class allegations have all the markings of a suit by a political subdivision attempting to sue as *parens patriae*. *Compare, e.g.*, (Doc. 48, at ¶ 207) (discussing a public nuisance harm to "the general public, including the public health, welfare, safety, peace, comfort, and convenience of Plaintiffs' communities"), *with Snapp*, 458 U.S. at 605-07 (noting abating public nuisances is bedrock *parens patriae* authority).

Ford County must be specifically authorized by statute to bring this suit. *See Reynolds*, 377 U.S. at 575 ("the number, nature, and duration of powers conferred upon [political subdivisions] and the territory over which they shall be exercised rests in the absolute discretion of the state" (cleaned up)); *Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183, 1192-93 (10th Cir. 1991) (examining state law to determine political subdivision's ability to sue); *Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800-01 (10th Cir. 2011) (recognizing and applying same); *Warren Cnty. v. North Carolina*, 528 F. Supp. 276, 282-83 (E.D.N.C. 1981) (rejecting argument that counties can invoke *parens patriae* because, "as political subdivisions," they "have only those powers necessary to the accomplishment of their declared objectives"); *Bd. of Cnty. Comm'rs of Cnty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181, 1185-86 (D. Colo. 2007) (concluding county lacked standing to sue when its action was not authorized by state law).

Kansas law does *not* empower Ford County to bring this suit. *See Cunningham v. Blythe*, 127 P.2d 489, 490 (1942) ("County commissioners have only such powers as are conferred upon them by statute."); *see also* K.S.A. 19-101a (county home rule powers and limitations); K.S.A. 19-212 (powers of board of commissioners); K.S.A. 60-908 (granting county attorney—not board of commissioners—authority to abate a nuisance). To the contrary, as discussed more thoroughly below, Kansas law vests the attorney general exclusively with this authority. *See infra* §§ II(b), (c). Ford County is not statutorily authorized to bring these claims, and it is not authorized to assert this "quasi-sovereign" interest as *parens patriae*.

The Court should dismiss Ford County's class allegations because it fundamentally lacks *parens patriae* standing to bring this action, which means it cannot satisfy its burden under

Article III and this Court lacks subject-matter jurisdiction.[6] Allowing Ford County to proceed means every State will "be judicially impeached on matters of policy by [one of Kansas's] subjects." *See New Jersey*, 345 U.S. at 372-73.

        **c. Ford County also fails to meet traditional standing to assert its class allegations on behalf of the general welfare of all Americans.**

Ford County must show a concrete, real and not hypothetical injury-in-fact that is fairly traceable to the Plastics Defendants and is likely to be redressed with a favorable decision. *Carlsen*, 833 F.3d at 908 (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Lacking *parens patriae* standing, Ford County's allegations of harm to public health, welfare, and safety are generalized grievances that fail to identify specific, concrete injuries unique to Ford County. The complaint largely focuses on the Plastics Defendants' alleged misconduct but offers no Ford County-specific facts whatsoever. *See, e.g.*, (Doc. 48, ¶¶ 205-16.) Without specific allegations, Ford County cannot establish the predicable chain of causation between the Plastics Defendants' actions and its purported (non-specific) injuries that is required under Article III. Because Ford County lacks *parens patriae* and traditional standing, Ford County cannot sufficiently support its class allegations. Thus, Ford County's class allegations should be dismissed.

---

[6] And to the extent Ford County denies it is suing as *parens patriae*, Ford County also cannot sue for all States and political subdivisions' proprietary interests as a class. When a governmental entity sues on its proprietary interests, it exercises its function as "an enterprise" in commercial activity like a private for-profit non-governmental entity. *See, e.g.*, *State ex rel. Stephan v. Brotherhood Bank & Tr. Co.*, 8 Kan. App. 2d 57, 62 (1982). Ford County also lacks the statutory authority to sue on proprietary interests on behalf of all States and their political subdivisions. *See infra* §§ II(b), (c); *see also Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004) (recognizing in diversity cases, courts "must consult state law to determine the nature of the litigant's rights and whether he is entitled to assert the claims he makes").

## II.     Ford County's class allegations must be dismissed because Ford County is not the real party in interest.

Kansas, *not Ford County*, is the real party in interest for these claims. All actions in federal court "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In diversity cases, state substantive law determines the real party in interest under Rule 17(a). *Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356 F.2d 718, 723 (8th Cir. 1966). Under Kansas law, the State (through the attorney general) is vested with the authority to bring claims for statewide public nuisances, consumer protection violations, antitrust claims, equitable relief, and other quasi-sovereign interests. Ford County lacks this same authority and, therefore, fails to state a claim upon which relief can be granted.

### a.     Kansas law determines the real party in interest.

Missouri's choice-of-law rules, which apply here, follow the "most significant relationship" test from the *Restatement (Second) of Conflicts of Laws* § 145. *See Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999); *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012). Under this test, Kansas law governs. Ford County's alleged injuries and the Plastics Defendants' alleged misconduct occurred in Kansas. *See* (Doc. 48, ¶ 23.) Ford County is an incorporated political subdivision of Kansas, (*id*.), while the Plastics Defendants are spread throughout the country, (Doc. 48, ¶¶ 24-33). And any relationship between Ford County and the Plastics Defendants exists *in Kansas* because the county's authority is statutorily limited to "county" and "local" matters. *See* K.S.A. 19-101a (a). In sum, Kansas has the most significant relationship.[7]

---

[7] And if there is any doubt, this Court "should apply the *lex loci delicti* rule; that is, it should apply the substantive law of the place where the injury occurred." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir. 1994). Again, any injury must have occurred *in Kansas*.

"Under Kansas law, the real party in interest is the one who, by virtue of the substantive law, holds the right sought to be enforced." *Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188, 1201 (D. Kan.), *aff'd*, 635 F. App'x 483 (10th Cir. 2015). Kansas law vests *only* the State, through its attorney general, with the right to sue over statewide nuisances, statewide violations of the Sherman Act, statewide violations of the Kansas Restraint of Trade Act, and statewide unjust enrichment. Accordingly, the State is the real party in interest.

### b. Kansas law designates the State as the real party in interest and vests statewide authority in the attorney general.

The inherent sovereign and statutory authority to sue over statewide public nuisances, restraints of trade, and unjust enrichment and to otherwise protect its residents' health and wellbeing is reserved to Kansas as a quasi-sovereign interest. *See Snapp*, 458 U.S. at 605-07; *Missouri v. Nat'l Org. for Women, Inc.*, 467 F. Supp. 289, 301 (W.D. Mo. 1979) (concluding the State had standing to sue as *parens patriae* to seek injunctive relief under antitrust laws), *aff'd*, 620 F.2d 1301 (8th Cir. 1980); K.S.A. 50-109 (authorizing attorney general to bring statewide restraint of trade claims); K.S.A. 60-908 (authorizing attorney general to bring statewide public nuisance claims); K.S.A. 75-702 (authorizing attorney general to represent the State in all actions, including in federal court); K.S.A. 50-628 (authorizing attorney general to enforce state consumer protection laws statewide). Indeed, abating public nuisances—as Ford County seeks to do—is a bedrock *parens patriae* interest. *See Snapp*, 458 U.S. at 605-07.

The Kansas legislature codified its intent to designate the attorney general—not political subdivisions—as the representative for the State in statewide litigation. For instance, K.S.A. 75-702 provides that the attorney general "shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals and in all federal courts, in which the state shall be interested or a party, and shall,

when so appearing, control the state's prosecution or defense." *See also Mountain States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980) (recognizing "general rule" that "the state attorney general . . . alone has the right to represent the state as to litigation involving a subject matter of statewide interest"); *Off. of the People's Couns. for D.C. v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 587 (D.C. 2024) (contrasting agency's "limited" litigation authority "with the D.C. Attorney General's plenary authority to litigate"). Unlike counties (via county attorneys), who are explicitly limited to addressing public nuisances "within" their counties, the attorney general's authority extends statewide. *Cf. Kan. City Breweries Co. v. Kansas City*, 96 Kan. 731, 733-35 (1915) (strictly construing public-nuisance statute); *Restatement (Second) of Torts* § 821C cmt. J (1979) (noting that statutorily authorized public officials may maintain an action to abate public nuisances).

Ford County's suit is effectively a statewide suit to resolve statewide consumer protection and public nuisance claims. Courts have consistently recognized that when alleged harms affect governmental units on a statewide basis, the State (via the attorney general) is the proper party to sue. *See Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 496 (4th Cir. 1981) ("[C]ommon sense dictates that when an alleged wrong affects governmental units on a state-wide basis, the state should seek redress on their behalf as well as on its own rather than parcelling out the actions among local agencies."); *Illinois v. Associated Milk Producers, Inc.*, 351 F. Supp. 436 (N.D. Ill. 1972) (holding the State, by its attorney general, was the real party in interest to bring statewide antitrust claims on behalf of itself and its political subdivisions).

Because Kansas law vests the authority to bring statewide claims exclusively in the State, Kansas—*not Ford County*—is the real party in interest. *See, e.g.*, *Puerto Rico v. Cordeco Dev. Corp.*, 534 F. Supp. 612, 614-16 (D.P.R. 1982) (concluding Puerto Rico was the real party in

interest because it had inherent and statutory authority to condemn property). Substitution, under Fed. R. Civ. P. 17(a)(3), would prejudice Kansas due to the complex, decades-long allegations, subject Kansas to an unconnected forum, and unduly delay the individual plaintiffs' claims. *See Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004). Therefore, the Court should dismiss Ford County's improper class allegations for failing to state a claim upon which relief can be granted.

### c. Ford County's "home rule power" ends at the county line.

Kansas law grants counties "home rule power," allowing them to govern local affairs, but this statutory authority is strictly limited by statute and cannot extend beyond the county's boundaries. *See* K.S.A. 19-101c; *Bd. of Cnty. Comm'rs v. Nielander*, 275 Kan. 257, 264 (2003) (powers limited to "local and administrative duties" as local unit deems appropriate, subject to constitutional and statutory limitations). When exercising its "home rule power," counties may only act *locally* and *consistent with* Kansas law. *See* K.S.A. 19-101; K.S.A. 19-101a(b).

By contrast and as discussed above, Kansas law designates the attorney general as the exclusive representative of the State in matters of statewide concern. Federal law also grants the attorney general sole authority to bring antitrust claims on behalf of the State. *See* 15 U.S.C. § 15c. The Kansas legislature (and Congress) clearly established the attorney general as the proper representative of the State in statewide litigation. Ford County's attempt to expand its localized authority to statewide or nationwide claims improperly infringes on the State's sovereign powers and exceeds the scope of its home rule authority.

### d. Ford County's class allegations are an improper exercise of sovereign authority and face insurmountable class certification issues.

The Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel.*

*Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (cleaned up). Ford County, as a political subdivision, does not share the sovereign interests or injuries of the States or their instrumentalities. As discussed above, allowing Ford County to proceed would improperly expand its local authority into Kansas's sovereign powers, contrary to Kansas law.

The Court should evaluate Ford County's class allegations at this stage to determine whether absent parties' interests are fairly represented. *See id.* at 160. Courts routinely strike class allegations at the pleading stage when they are facially deficient. *See Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004); *see also* Fed. R. Civ. P. 12(b)(6), 12(f), 23(d). Ford County's proposed class is incompatible with federal and state common and statutory law.

Kansas law limits Ford County's ability to infringe on the independence of other counties and the sovereignty of the State. *See* K.S.A. 19-101; K.S.A. 19-702; K.S.A. 19-703; K.S.A. 19-723; K.S.A. 19-247. Ford County's class allegations improperly attempt to assert authority well beyond its statutory limits, undermining both Kansas's sovereignty and the local autonomy of other political subdivisions. *See Cnty. of Dorchester v. AT&T Corp.*, 407 F. Supp. 3d 561, 568 (D.S.C. 2019) (finding proposed class of counties could not proceed because it impedes on other counties and the State, contrary to state law).

Further, treating sovereign governmental entities as indistinguishable from private individuals disregards the distinct and individualized interests of each State, county, city, and other political subdivision. And Ford County's class allegations blatantly fail to account for the highly individualized and localized interests of each State and political subdivision. Courts have consistently rejected class allegations where claims require individualized factual and legal inquires, as is the case here. *See, e.g.*, *Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 279 (4th Cir. 1980) (district court abused its discretion permitting class of "great number" of "geographic

spread of the decisionmakers" with "almost complete local autonomy"); *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006) (class allegations rejected where "multiple decisionmakers with significant local autonomy exist"); *Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 109 (D. Kan. 2024). At this early stage, the Court should dismiss Ford County's class allegations.[8]

### III. Although Ford County flees Kansas for a better forum, this District is not the proper venue.

Ford County asserts venue is proper here principally because "a substantial part of the events or omissions giving rise to [its] claims" occurred within this District (Doc. 48, ¶ 14); *see also* 28 U.S.C. § 1391(b). Because Ford County is a named plaintiff bringing federal and state-law claims, venue must be proper for *each* of its claims. *See Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir. 1985); *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018) ("[T]he 'events' in question are only those involving the named plaintiffs.").

Ford County's alleged injuries and the Plastics Defendants' alleged misconduct concern a public nuisance at Ford County's landfill *in Kansas* and its purchase of plastic products *in Kansas*. (Doc. 48, ¶ 23.) Ford County knows venue is improper here because this District was not its first choice.[9] It cannot realistically bring its claims (particularly a public nuisance action) outside Kansas. Ford County's decision to flee across the state line highlights its attempted usurpation of *parens patriae* authority. This Court should dismiss Ford County's allegations (or at least transfer them to Kansas). *See* 14D Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3827 (4th ed. June 2024 update) (recognizing "courts often dismiss . . .

---

[8] If the Court declines to dismiss, it should alternatively strike the class allegations under Rule 12(f). *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (noting courts may strike class allegations at pleadings stage if it is clear class cannot be certified, as such allegations are impertinent and prejudicial).

[9] Ford County voluntarily dismissed its District of Kansas suit after Defendant Exxon Mobil Corp. moved to transfer venue of this case. *See* (Docs. 3-4, 47, 55); *see also* Class Action Complaint, *Ford County v. Exxon Mobil Corp.*, No. 2:24-cv-02547-KHV-GEB (D. Kan. Nov. 27, 2024).

if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged").

<u>CONCLUSION</u>

Dismissal of Ford County's class allegations is paramount to safeguarding the sovereignty of States within the federal system. Allowing a political subdivision to usurp Kansas's *parens patriae* authority sets a dangerous precedent, potentially inviting a flood of fragmented litigation by political subdivisions across the country. This undermines Kansas's exclusive right to represent *all* of its citizens' interests in matters of public health and welfare. Preserving this balance of power is essential to the proper functioning of the federalist system. For the foregoing reasons, the Court should dismiss Ford County's class allegations from the First Amended Complaint without prejudice.

**Dated:** March 3, 2025

Respectfully submitted,

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/ Nicholas C. Smith*
Melanie S. Jack, W.D. Mo. No. KS-001292
 *First Assistant Attorney General*
Nicholas C. Smith, W.D. Mo. No. KS-001290
 *Assistant Attorney General*
Adam T. Steinhilber, Mo. Bar No. 73959
 *Assistant Solicitor General*
**OFFICE OF ATTORNEY GENERAL**
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-3751
Fax:    (785) 291-3699
Email: Melanie.Jack@ag.ks.gov
        Nicholas.Smith@ag.ks.gov
        Adam.Steinhilber@ag.ks.gov

*Attorneys for State of Kansas*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of March, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance.

*/s/ Nicholas C. Smith*
Nicholas C. Smith