## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

BILLIE RODRIGUEZ, DANIEL ERWIN,
MICHAEL B. ACKERMAN, KYLE
FOREMAN, DREW SCRUGGS, MARY
KANE MCQUEENY, EMILY THORPE,
JENNIFER TRITT, and THE BOARD OF
COUNTY COMMISSIONERS OF THE
COUNTY OF FORD, individually and on
behalf of all others similarly situated,

              *Plaintiffs*,

        v.

EXXON MOBIL CORPORATION,
CHEVRON USA INC., CHEVRON PHILLIPS
CHEMICAL COMPANY LP, DUPONT de
NEMOURS INC., CELANESE
CORPORATION, DOW INC., DOW
CHEMICAL COMPANY, EASTMAN
CHEMICAL COMPANY,
LYONDELLBASELL INDUSTRIES, N.V.,
and AMERICAN CHEMISTRY COUNCIL,

              *Defendants*,

And

STATE OF KANSAS, *ex rel.* KRIS W.
KOBACH, Attorney General,

           *Defendant-Intervenor.*

**Civil Action No. 4:24-00803**

**Honorable Stephen R. Bough**


**<u>ORAL ARGUMENT REQUESTED</u>**


## SUGGESTIONS IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
## <u>CLASS ACTION COMPLAINT PURSUANT TO RULES 12(B)(1) AND 12(B)(6)</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ....................................................................................4

LEGAL STANARD.................................................................................................7

ARGUMENT .........................................................................................................8

    I.       PLAINTIFFS LACK ARTICLE III STANDING (ALL COUNTS).....................8

    II.     PLAINTIFFS FAIL TO STATE ANY ANTITRUST CLAIM (COUNTS 1, 18–45) ...............................................................................................10

        A.      Plaintiffs Fail to Allege Any Restraint of Trade ......................................10

        B.      Plaintiffs Fail to Plead an Agreement .......................................................11

            1.      Plaintiffs Rely on Improper Group Pleading..................................12

            2.      Plaintiffs Have Not Pleaded Direct Evidence of an Unlawful Agreement ......................................................................................13

            3.      Plaintiffs Have Pleaded No Circumstantial Evidence From Which This Court May Infer an Unlawful Agreement ..................13

                 i       Plaintiffs Fail to Plead Parallel Conduct...........................13

                 ii      Plaintiffs Fail To Allege Any "Plus Factors" ...................15

        C.      Defendants' Conduct is Immune Under the *Noerr-Pennington* Doctrine.....................................................................................................17

        D.      Plaintiffs Do Not Plausibly Allege an Unreasonable Restraint of Trade ........................................................................................................18

            1.      Plaintiffs Fail to Adequately Allege a Relevant Market ................18

            2.      Plaintiffs Fail to Plausibly Allege Detrimental Effects on Competition ....................................................................................20

        E.      Plaintiffs Fail to Plead Antitrust Standing .................................................22

            1.      Plaintiffs Have Not Plausibly Alleged Antitrust Injury .................22

            2.      Plaintiffs Are Not "Proper Parties" .................................................23

        F.      Additional Independent Grounds to Dismiss the State Antitrust Claims Exist ...............................................................................................26

    III.    FORD COUNTY FAILS TO STATE A PUBLIC NUISANCE CLAIM (COUNT 2) ...............................................................................................27

    A.    Kansas Law Governs Ford County's Public Nuisance Claim ..................28

    B.    The Board of County Commissioners of Ford County Lacks the Authority to Bring a Public Nuisance Claim on Either an Individual or Class Basis ........................................................28

    C.    Ford County's Public Nuisance Claim Fails for Numerous Reasons ........30

        1.    Defendants' Lawful Sale of Plastic and Promotion of Recycling Are Authorized and Protected by Law ..........................31

        2.    Ford County Does Not Plead Conduct that Is Frequent or Continuous........................................................33

        3.    No Proximate Cause Links the Alleged Conduct and Ford County's Injury................................................34

        4.    Disposal of Plastic Was Not Within Defendants' Control .............35

IV.    PLAINTIFFS FAIL TO StATE A VIABLE CONSUMER FRAUD CLAIM........................................................36

    A.    Plaintiffs Have Not Satisfied the Rule 9(b) Pleading Standard (Counts 3–17)................................................36

    B.    Plaintiffs Fail to Establish Standing for Certain of the Consumer Fraud Claims (Counts 3–7 & 9–17)........................38

    C.    Plaintiffs Fail to Plausibly Allege Any Actionable Deception (Counts 3–17)................................................39

        1.    Lobbying Efforts Are Protected Under the First Amendment ........40

        2.    Statements Mandated by the Government Are Protected ..............40

        3.    No Reasonable Consumer Would Be Misled by the Challenged Statements ................................................41

        4.    Plaintiffs Fail to Allege an Actionable Omission (Counts 3–4, 8)................................................44

V.    PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM (COUNT 46) ................................................46

VI.    ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED (ALL COUNTS) ................................................48

CONCLUSION................................................50

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.O.A. v. Rennert*,
  350 F. Supp. 3d 818 (E.D. Mo. 2018)....................................................................37

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
  181 F.3d 216 (2d Cir. 1999)...............................................................................14

*AGRED v. U.S. Army*,
  3 F.4th 1069 (8th Cir. 2021) ...........................................................................8, 10

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ..................................................................45

*Allied Tube & Conduit Corp. v. Indian Head*,
  486 U.S. 492 (1988)..........................................................................................17

*Am. Italian v. Pasta*,
  371 F.3d 387 (8th Cir. 2004) .............................................................................41

*Apex Hosiery Co. v. Leader*,
  310 U.S. 469 (1940)..........................................................................................10

*Appliance Recycling Ctrs. v. JACO*,
  378 F. App'x 652 (9th Cir. 2010) ........................................................................41

*Ariz. v. Cook*,
  391 F. Supp. 962 (D. Ariz. 1975), *aff'd*, 541 F.2d 226 (9th Cir. 1976)................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................8

*Ashley Cnty. v. Pfizer*,
  552 F.3d 659 (8th Cir. 2009) ...................................................................34, 35, 39

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*,
  459 U.S. 519 (1983)..........................................................................................23

*Associated Radio Serv. Co. v. Page Airways, Inc.*,
  624 F.2d 1342 (5th Cir. 1980) ...........................................................................10

*Atchison, Topeka & Santa Fe Ry. v. Armstrong*,
  80 P. 978 (Kan. 1905)........................................................................................31

*In re Auto. Parts Antitrust Litig.*,
2015 WL 14047405 (E.D. Mich. Apr. 30, 2015).............................................29, 30

*In re Auto. Parts Antitrust Litig.*,
29 F. Supp. 3d 982 (E.D. Mich. 2014)..................................................................27

*Baldwin v. City of Overland Park*,
468 P.2d 168, 172 (Kan. 1970).............................................................................34

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................... *passim*

*Bell v. Annie's Inc.*,
2023 WL 3568623 (E.D. Mo. May 18, 2023) .................................................41, 46

*Black v. Moneygram*,
2016 WL 3683003 (E.D. Mo. July 12, 2016) .......................................................26

*Black v. Union Pac.*,
2024 U.S. Dist. LEXIS 141907 (Kan. D. Ct. Aug. 8, 2024) ..................................48

*Blessing v. Chandrasekhar*,
988 F.3d 889 (6th Cir. 2021) ..................................................................................1

*Blomkerst v. Potash*,
203 F.3d 1028 (8th Cir. 2000) ..............................................................................13

*Bookends & Beginnings LLC v. Amazon.com*,
2022 WL 18144916 (S.D.N.Y. Aug. 24, 2022) ...................................................16

*Bos. v. Aetna*,
399 Mass. 569 (1987) ...........................................................................................39

*Bowen v. City of Kansas City*,
231 Kan. 450 (1982) .............................................................................................48

*Brown Shoe Co. v. U.S.*,
370 U.S. 294 (1962)..............................................................................................18

*Buetow v. A.L.S.*,
564 F. Supp. 2d 1038 (D. Minn. 2008)................................................................13

*Bule v. Garda*,
2014 WL 3501546 (S.D. Fla. July 14, 2014)........................................................47

*Bumpers v. Cmty. Bank of N. Va.*,
747 S.E.2d 220 (N.C. 2013)............................................................................38, 39

*Cal. Dental v. FTC*,
526 U.S. 756 (1999) .................................................................................................... 10

*In re Can. Import Antitrust Litig.*,
470 F.3d 785 (8th Cir. 2006) ...................................................................................... 22

*Cannuscio v. GEICO*,
2022 WL 22881849 (D. Nev. Dec. 13, 2022) .......................................................... 39

*Carefirst of Md., Inc. v. J&J*,
745 F. Supp. 3d 288 (2024) ........................................................................................ 24

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) .................................................................................................... 23

*In re Cattle & Beef Antitrust Litig.*,
687 F. Supp. 3d 828 (D. Minn. 2023) ................................................................. 23, 26

*Cherry v. Bd. of Cty. Comms.*,
202 Kan. 121 (1968) .................................................................................................... 35

*Chi. Pro. Sports v. NBA*,
95 F.3d 593 (7th Cir. 1996) ........................................................................................ 10

*Cho v. Hyundai*,
636 F. Supp. 3d 1149 (C.D. Cal. 2022) ..................................................................... 47

*In re Chocolate*,
801 F.3d 383 (3d. Cir. 2015) ...................................................................................... 17

*City of Chicago v. Beretta U.S.A.*,
821 N.E.2d 1099 (Ill. 2004) ........................................................................... 31, 33, 34

*Clough v. Hart*,
8 Kan. 487 (1871) ........................................................................................................ 29

*Collins v. Metro. Life Ins. Co.*,
117 F.4th 1010 (8th Cir. 2024) ................................................................................... 36

*Collyer v. Catalina*,
712 F. Supp. 3d 1276 (N.D. Cal. 2024) ..................................................................... 39

*Concord v. Brunswick*,
207 F.3d 1039 (8th Cir. 2000) .................................................................................... 18

*Copper Sands v. Copper Sands Realty, LLC*,
2013 WL 3270430 (D. Nev. June 26, 2013) .............................................................. 38

*Corbett v. City of Kensington*,
530 P.3d 750 (Kan. Ct. App. 2023) ..................................................33

*Craftsmen v. Limousine, Inc.*,
491 F.3d 380 (8th Cir. 2007) ....................................................18, 20, 21, 22

*In re Crop Inputs Antitrust Litig.*,
2024 WL 4188654 (E.D. Mo. Sept. 13, 2024) ..............................................12, 16

*Curtis v. 7-Eleven, Inc.*,
2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ...............................................42, 43

*CVB v. Corsicana*,
2024 WL 4505044 (D. Utah Oct. 16, 2024) ..........................................16

*In re Dairy Farmers Antitrust Litig.*,
2015 WL 3988488 (N.D. Ill. June 29, 2015) .........................................24

*Davenport v. Charter Commc'ns, LLC*,
35 F. Supp. 3d 1040 (E.D. Mo. 2014).................................................27

*Davis v. FEC*,
554 U.S. 724 (2008)..................................................................7

*Doe 9 v. Varsity Brands, LLC*,
2023 WL 4113198 (D.S.C. June 21, 2023)..............................................39

*Double D Spotting Serv. V. Supervalu, Inc.*,
136 F.3d 554 (8th Cir. 1999) ........................................................18

*Drainage Dist. No. 3 v. Riverside Drainage*,
178 P. 433 (Kan. 1919)...............................................................29

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
2013 WL 5503308 (D.N.J. Oct. 2, 2013).............................................46

*E. Enters v. Apfel*,
524 U.S. 498 (1998)..................................................................33

*E. Maine Baptist Church v. Union Planters Bank, N.A.*,
2007 WL 927760 (E.D. Mo. Mar. 26, 2007) .......................................50

*E-Z Dock v. Shoremaster*,
2006 WL 1153901 (W.D. Mo. Apr. 25, 2006) .....................................18

*Edwards v. Camden Operations, LLC*,
2018 WL 3478905 (W.D. Ark. July 19, 2018) ....................................45

*Ellis v. Nike*,
  2024 WL 1344805 (E.D. Mo. Mar. 28, 2024) ................................................................39, 44

*Ellison-Robbins v. Bimbo Bakeries*,
  2024 WL 4332049 (E.D. Mo. Sept. 27, 2024) ...................................................................39

*Embree Const. v. Rafcor, Inc.*,
  411 S.E.2d 916 (N.C. 1992) ................................................................................................47

*EnviroPAK Corp. v. Zenfinity Cap., LLC*,
  2015 WL 331807 (E.D. Mo. Jan. 23, 2015) ......................................................................21

*Fejzulai v. Sam's W.*,
  205 F. Supp. 3d 723 (D.S.C. 2016) ....................................................................................39

*In re Firearm*,
  126 Cal. App. 4th 959 (2005) ............................................................................................31

*Five Smiths, Inc. v. Nat'l Football League*,
  788 F. Supp. 1042 (D. Minn. 1992) .............................................................................13, 18

*Flegel v. Christian Hosp.*,
  4 F.3d 682 (8th Cir. 1993) ..................................................................................................20

*In re Foods, Inc. Sec. Litig.*,
  275 F. Supp. 3d 970 (W.D. Ark. 2017) ..............................................................................16

*State ex rel. Ford Motor Co. v. Bacon*,
  63 S.W.3d 641 (Mo. 2002) ..................................................................................................37

*Foreman v. Haliron*,
  2021 WL 5139519 (W.D. Ark. Nov. 3, 2021) ....................................................................46

*GDHI Mktg. v. Antsel*,
  416 F. Supp. 3d 1189 (D. Colo. 2019) ..........................................................................11, 23

*In re Gen. Motors Corp. Litig.*,
  966 F. Supp. 1525 (E.D. Mo. 1997) ...................................................................................38

*Ginsburg v. InBev*,
  623 F.3d 1229 (8th Cir. 2010) ............................................................................................25

*Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*,
  433 F. App'x 598 (9th Cir. 2011) .......................................................................................18

*Goldfinch v. Iowa Pathology*,
  2024 WL 5205936 (S.D. Iowa Dec. 13, 2024) ...................................................................22

*Gonzalez v. Am. Honda*,
  720 F. Supp. 3d 833 (C.D. Cal. 2024) ....................................................................39

*Greenley v. Kochava*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..................................................................46

*Guay v. Sig*,
  626 F. Supp. 3d 536 (D.N.H. 2022) ......................................................................39

*Guerrero v. Henkel*,
  2024 WL 2769745 (E.D. Mo. 2024) ......................................................................44

*Hammack v. Harbor Freight*,
  2022 WL 14225017 (W.D. Mo. Oct. 24, 2022) .....................................................47

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................45

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  2020 WL 6270948 (N.D. Cal. Oct. 23, 2020) .........................................................9

*Harrison v. Aerostar*,
  316 F. Supp. 2d 186 (E.D. Pa. 2004) ....................................................................23

*Healy v. Beer Inst.*,
  491 U.S. 324 (1989) ...............................................................................................47

*Hennessey v. Gap*,
  86 F.4th 823 (8th Cir. 2023) .................................................................................36

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
  2016 WL 7479402 (C.D. Cal. July 7, 2016) ..........................................................22

*Hobart-Mayfield v. Nat'l Op. Comm. on Standards for Athletic Equip.*,
  48 F.4th 656 (6th Cir. 2022) ..........................................................................12, 26

*Hofstetter v. Myers*,
  228 P.2d 522 (Kan. 1951) .....................................................................................34

*HOK Sport v. FC Des Moines*,
  495 F.3d 927 (8th Cir. 2007) ................................................................................37

*Howard v. Mo. Bone*,
  615 F.3d 991 (8th Cir. 2010) ..................................................................................8

*Huffman v. Credit Union*,
  2013 WL 1121268 (W.D. Mo. Mar. 18, 2013) ......................................................50

*Hunter v. J&J,*
  499 P.3d 719 (Okla. 2021) ........................................................................................30, 32, 35

*Hunter v. Page Cnty., Iowa,*
  102 F.4th 853 (8th Cir. 2024) ..................................................................................................24

*Ill. Brick v. Ill.,*
  431 U.S. 720 (1977)...................................................................................................................26

*Illig v. Union,*
  652 F.3d 971 (8th Cir. 2011) ...................................................................................................48

*Impro Prods. v. Herrick,*
  1982 WL 1883 (S.D. Iowa Aug. 13, 1982), *aff'd,* 715 F.2d 1267 (8th Cir.
  1983) ...........................................................................................................................................13

*Indep. Cnty. v. Pfizer,*
  534 F. Supp. 2d 882 (E.D. Ark. 2008), *aff'd Ashley Cnty.,* 552 F.3d 659 ..............................39

*Insulate SB v. Adv. Finishing,*
  797 F.3d 538 (8th Cir. 2015) ............................................................................................12, 26

*Insulate SB. v. Advanced Finishing Sys.,*
  2014 WL 943224 (D. Minn. Mar. 11, 2024) .........................................................................26

*James v. PepsiCo,*
  222 N.Y.S.3d 907 (N.Y. Sup. Ct. 2024) .............................................................30, 31, 32, 35

*U.S. ex rel. Joshi v. St. Luke's Hosp.,*
  441 F.3d 552, 556 (8th Cir. 2006) ..........................................................................................36

*In re Keurig Green Mountain Antitrust Litig.,*
  383 F. Supp. 3d 187 (S.D.N.Y. 2019).....................................................................................25

*Korte v. State on Rel. of Bd. of Regents of Nev.,*
  492 P.3d 540 (Nev. 2021) .........................................................................................................47

*Kwikset v. Sup. Ct.,*
  246 P.3d 877 (Cal. 2011) ..........................................................................................................38

*Laccinole v. Gulf,*
  2023 WL 157719 (D.R.I. Jan. 11, 2023) ................................................................................39

*In re Lead Paint Litig.,*
  924 A.2d 484 (N.J. 2007)..........................................................................................................30

*In re Lipitor Antitrust Litig.,*
  336 F. Supp. 3d 395 (D.N.J. 2018) ........................................................................................27

*In re Lithium Ion Batteries Antitrust Litig.,*
2014 WL 4955377 (N.D. Cal. Oct. 2, 2014).................................................29

*Lizama v. H&M LP,*
2023 WL 3433957 (E.D. Mo. May 12, 2023) ........................................43, 44

*LLM Bar v. Barbri,*
271 F. Supp. 3d 547 (S.D.N.Y. 2017)...........................................................14

*In re Loestrin 24 FE Antitrust Litig.,*
410 F. Supp. 3d 352 (D.R.I. 2019)..........................................................27, 39

*Lofts v. Strategies Floor,*
224 A.3d 116 (Vt. 2019) ...............................................................................39

*Lombardo v. J&J,*
124 F. Supp. 3d 1283 (S.D. Fla. 2015) .........................................................38

*Lorix v. Crompton Corp.,*
736 N.W.2d 619 (Minn. 2007).......................................................................24

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)....................................................................................7, 9

*Mahaska v. Pepsico,*
271 F. Supp. 3d 1054 (S.D. Iowa 2017) .......................................................20

*Mangiardi v. Dewey,*
2013 WL 1856338 (D.N.H. Apr. 30, 2013)...................................................47

*Marshall v. Miller,*
276 S.E.2d 397 (N.C. 1981)..........................................................................42

*Master's Transp. v. Rev Grp., Inc.,*
2020 WL 13580661 (W.D. Mo. Nov. 12, 2020).............................................37

*May v. Makita,*
2023 WL 417487 (E.D. Mo. Jan. 26, 2023) ..................................................47

*Mayor of Balt. v. BP,*
2024 WL 3678699 (Md. Cir. Ct. July 10, 2024).......................................34, 35

*McDonald v. J&J,*
722 F.2d 1370 (8th Cir. 1983) ................................................................22, 23

*Melton v. Carolina Power & Light,*
2012 WL 2401635 (D.S.C. June 25, 2012)....................................................47

*Midwest Commc'ns v. Minn. Twins, Inc.*,
 779 F.2d 444 (8th Cir. 1985) ...................................................................22

*In re Milk Prods. Antitrust Litig.*,
 84 F. Supp. 2d 1016 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999) ..........................50

*Miller v. Redwood Toxicology Lab'y, Inc.*,
 688 F.3d 928 (8th Cir. 2012) ...................................................................38

*Milman v. FCA*,
 2019 WL 3334612 (C.D. Cal. Apr. 15, 2019) ...............................................46

*Mis. for Fiscal Acct. v. Klahr*,
 830 F.3d 789 (8th Cir. 2016) .....................................................................5

*Monsanto v. Swann*,
 2001 WL 34079489 (E.D. Mo. Sept. 19, 2001)..............................................19

*Mont. v. Trinity*,
 473 P.3d 1009 (Mont. 2020) ....................................................................47

*Moore v. Mack's*,
 2017 WL 4350980 (E.D. Ark. Sept. 29, 2017)..............................................39

*In re Mun.*,
 429 F. Supp. 3d 647 (D. Minn. 2019)........................................................41

*In re Musical Instruments Antitrust Litig.*,
 798 F.3d 1186 (9th Cir. 2015) ...........................................................16, 21

*N. Co. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct*,
 914 P.2d 902 (Colo. 1996)......................................................................24

*N.Y. v. Exxon Mobil Corp.*,
 2025 WL 209843 (N.Y. Sup. Ct. Jan. 14, 2025)...........................................44

*New Prime, Inc. v. Eaton Corp.*,
 2017 WL 5992466 (W.D. Mo. Mar. 16, 2017) (Bough, J.)................................49

*In re Niaspan Antitrust Litig.*,
 42 F. Supp. 3d 735 (E.D. Pa. 2014) .........................................................39

*Niemann v. Carlsen*,
 2023 WL 4198227 (E.D. Mo. June 27, 2023) ..............................................23

*Nivia v. Nationstar*,
 2014 WL 4146889 (S.D. Fla. Aug. 21, 2014)...............................................44

*Oakland v. BP*,
    325 F. Supp. 3d 1017 (N.D. Cal. 2018) ...................................................................30

*Ohio v. Am. Express*,
    585 U.S. 529 (2018) ..........................................................................................20

*Olin v. Dakota Access, LLC*,
    910 F.3d 1072 (8th Cir. 2018) ...........................................................................36

*OneSky v. Sullivan*,
    2012 WL 124739 (D.N.H. Jan. 17, 2012) .............................................................46

*In re Opana ER Antritrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ..................................................................27

*Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*,
    339 F.3d 1001 (8th Cir. 2003) ...........................................................................27

*In re Packaged Seafood Prod. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) ...............................................................46

*Park v. Express*,
    911 F.3d 505 (8th Cir. 2018) .................................................................13, 14, 15

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
    2025 WL 606533 (N.D. Ohio Feb. 25, 2025) .......................................................16

*Patenaude v. Orgain, LLC*,
    594 F. Supp. 3d 108 (D. Mass. 2022) .................................................................39

*People v. Sturm*,
    761 N.Y.S. 2d 192 (App. Div. 2003) ..............................................................32, 34

*Philadelphia v. Beretta*,
    126 F. Supp. 2d 882 (E.D. Pa. 2000) .................................................................35

*Piescik v. CVS*,
    576 F. Supp. 3d 1125 (S.D. Fla. 2021) ...............................................................39

*Pilot v. Hofarth*,
    550 N.W.2d 27 (Neb. 1996) ..............................................................................47

*In re Pork*,
    2019 WL 3752497 (D. Minn. Aug. 8, 2019) .......................................................13

*In re Pork*,
    495 F. Supp. 753 (D. Minn. 2020) .....................................................................50

*In re Pre-Filled Propane Tank Antitrust Litig.*,
  2016 WL 6963059 (W.D. Mo. Jan. 13, 2016) ..................................................26, 38

*Process Controls v. Emerson*,
  2011 WL 403121 (E.D. Mo. Feb. 1, 2011)..................................................................19

*Razorback Ready Mix Concrete Co. v. Weaver*,
  761 F.2d 484 (8th Cir. 1985) .....................................................................................17

*Riddell v. GM LLC*,
  2024 WL 2077559 (E.D. Mo. May 9, 2024) ..............................................................44

*Ridder v. Hibsch*,
  94 S.W.3d 470 (Mo. Ct. App. 2003).........................................................................49

*Ripplinger v. Amoco Oil Co.*,
  916 F.2d 441 (8th Cir. 1990) .....................................................................................49

*Robert E. Ricciardelli v. Home Depot*,
  679 F. Supp. 2d 192 (D. Mass. 2010) ......................................................................46

*Rochester v. Monsanto*,
  883 F. Supp. 2d 835 (E.D. Mo. 2012)......................................................................44

*Rodi v. S. New Emg. Sch. of L.*,
  532 F.3d 11 (1st Cir. 2008).......................................................................................38

*Sanderson v. Culligan Int'l*,
  415 F.3d 620 (7th Cir. 2005) ....................................................................................11

*In re Santa Fe Nat. Tobacco Co. Liab. Litig.*,
  288 F. Supp. 3d 1087 (D.N.M. 2017) .......................................................................47

*Santagate v. Tower*,
  833 N.E.2d 171 (Mass. App. Ct. 2005) ....................................................................47

*Santana v. Bobrick*,
  401 F.3d 123 (3d Cir. 2005)......................................................................................11

*Saucier v. Countrywide*,
  64 A.3d 428 (D.C. 2013) ..........................................................................................39

*Serfecz v. Jewel*,
  67 F. 3d 591 (7th Cir. 1995) .....................................................................................16

*Southland v. INSpire Ins.*,
  365 F.3d 353 (5th Cir. 2004) ....................................................................................37

*State of S.D. v. Kan. City S. Indus.*,
  880 F.2d 40 (8th Cir. 1989) ...........................................................................24

*Stifel v. Dain*,
  578 F.2d 1256 (8th Cir. 1978) .......................................................................18

*Streambend v. Ivy Tower*,
  781 F.3d 1003 (8th Cir. 2015) .........................................................................8

*SUEZ v. E.I. du Pont*,
  578 F. Supp. 3d 511 (S.D.N.Y. 2022).............................................................31

*Summerhill v. Terminix*,
  637 F.3d 877 (8th Cir. 2011) .....................................................................49, 50

*Sup. Auto Transp., LLC v. Arcelor Mittal*,
  238 F. Supp. 3d 1032 (N.D. Ill. 2017) ............................................................24

*Sup. Auto Transp., LLC v. Arcelor Mittal USA*,
  902 F.3d 735 (7th Cir. 2018) .....................................................................24, 25

*Swartz v. Coca-Cola*,
  2023 WL 4828680 (N.D. Cal. July 27, 2023)...............................................9, 42

*Swartz v. Coca-Cola Co.*,
  2022 WL 17881771 (N.D. Cal. Nov. 18, 2022) ...............................................43

*Taylor v. Airco*,
  503 F. Supp. 2d 432 (D. Mass. 2007), *aff'd sub nom.*, 576 F.3d 16 (1st Cir.
  2009) ...............................................................................................................37

*Tepper v. Talent*,
  561 F. Supp. 3d 846 (D. Neb. 2021)................................................................39

*Thomas v. FAG*,
  50 F.3d 502 (8th Cir. 1995) ............................................................................30

*Thompson v. Genesco, Inc.*,
  2024 WL 81187 (E.D. Mo. Jan. 8, 2024) ..........................................................9

*Thornton v. Kroger*,
  2022 WL 488932 (D.N.M. Feb. 17, 2022) ......................................................39

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
  984 F.2d 915 (8th Cir. 1993) ..........................................................................33

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)...........................................................................................7

*Tucker v. Gen. Motors*,
  58 F.4th 392 (8th Cir. 2023) ...................................................................................46

*Watkins v. MGA Ent., Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021) ......................................................................45

*White v. Volkswagen Grp. of Am., Inc.*,
  2013 WL 685298 (W.D. Ark. Feb. 25, 2013) ..........................................................45

*Wiles v. Sw. Bell Tel.*,
  2010 WL 1463025 (W.D. Mo. Apr. 13, 2010) .........................................................47

*Williams v. Amoco Prod. Co.*,
  734 P.2d 1113 (Kan. 1987) ........................................................................................35

*Winter v. Novartis Pharms.*,
  739 F.3d 405 (8th Cir. 2014) .....................................................................................28

*Young v. Era*,
  513 P.3d 505 (Mont. 2022) .........................................................................................39

*Zanani v. Savad*,
  217 A.D.2d 696 (2d Dep't 1995) ...............................................................................44

**Statutes**

15 U.S.C. § 15(b) ............................................................................................................48

42 U.S.C. § 9627(b) ........................................................................................................42

42 U.S.C. § 13101(b) ........................................................................................................6

Ariz. Rev. Stat. § 44-1410 ..............................................................................................48

Ariz. Rev. Stat. § 44-1415(A) ........................................................................................27

Ark. Code Ann. § 4-88-101(3).........................................................................................40

Ark. Code Ann. § 4-88-108 ............................................................................................39

Ark. Code § 4-88-113(f)(1)(B) .......................................................................................38

Ark. Code § 4-88-113(f)(2) ............................................................................................38

Ark. Code § 4-88-115 .....................................................................................................48

Ark. Code § 8-9-302 .......................................................................................................42

16 CFR § 260.12(a)..........................................................................................................43

16 CFR § 260.12(b)(1) ...................................................................................42

Cal. Bus. & Prof. Code § 16750.1 ...............................................................48

Cal. Bus. & Prof. Code § 17208 ...................................................................48

Cal. Bus. & Prof. Code § 17580.5 ................................................................42

Colo. Rev. Stat. Ann. § 6-4-115 ...................................................................24

Colo. Rev. Stat. Ann. § 6-4-116 ...................................................................27

Colo. Rev. Stat. Ann. § 6-4-119 ...................................................................48

Colo. Rev. Stat. § 6-4-114(1) (enacted in 2023) .........................................27

Conn. Gen. Stat. Ann. § 35-37 .....................................................................27

Conn. Gen. Stat. § 35-40 ..............................................................................48

Conn. Gen. Stat. § 35-46a (2017) .................................................................27

D.C. Code § 12–301 ......................................................................................48

D.C. Code § 28-3901(d) ...............................................................................42

D.C. Code § 28-4511 .....................................................................................48

Fla. Stat. § 95.11(3) .......................................................................................48

Fla. Stat. § 501.204(2) ...................................................................................42

Fla. Stat. § 501.212(1) .............................................................................40, 42

Haw. Rev. Stat. Ann. § 480-24 .....................................................................48

Haw. Rev. Stat. § 480-13.3 ...........................................................................27

Ill. Comp. Stat. 10/6 ......................................................................................48

Ill. Comp. Stat. § 10/7(2) ..............................................................................27

Iowa Code § 553.16 .......................................................................................48

K.S.A. 60-513 ................................................................................................48

Kan. Stat. § 60-512 ........................................................................................48

Kan. Stat. § 60-908 ...................................................................................28, 29

Kan. Stat. § 65-3401(e) ..................................................................................31

Kan. Stat. § 65-3425 ...................................................................................5, 32

Mass. Gen. Laws 260, § 5A ...........................................................................48

Mass. Gen. Laws Ann. ch. 93A, § 3 ..........................................................40, 42

Mass. Gen. Laws ch. 93A, § 2 ......................................................................42

Md. Code Ann., Com. Law § 11-209 .........................................................27, 48

Me. Rev. Stat. Ann. Tit. 14 § 752 .................................................................48

Mich. Comp. Laws § 445.781 ........................................................................48

Minn. Stat. Ann. § 325D.63 ..........................................................................27

Minn. Stat. Ann. § 325D.64 ..........................................................................48

Miss. Code § 15-1-49 ....................................................................................48

Mo. Code Regs. tit. § 15 CSR 60-8.020(1)(A) ..............................................42

Mo. Rev. Stat. § 56.060 .................................................................................29

Mo. Rev. Stat. § 260.281 .................................................................................5

Mo. Rev. Stat. § 407.020 ...............................................................................39

Mo. Rev. Stat. § 407.025 .........................................................................41, 46

Mo. Stat. § 516.120 .......................................................................................48

Mont. Code § 27–2–211 ................................................................................48

Mont. Code § 27–2–2116 ..............................................................................42

Mont. Code § 30-14-133(1) ...........................................................................38

N.C. Gen. Stat. § 75-16.2 ..............................................................................48

N.D. Cent. Code § 51-08.1-10 .......................................................................48

N.H. Rev. Stat. § 356:11 (2008) ....................................................................27

N.H. Rev. Stat. § 356:12 ...............................................................................48

N.H. Rev. Stat. § 358-A:13 ............................................................................42

N.H. Rev. Stat. § 508:4 .................................................................................48

N.M. Stat. Ann. § 57-12-7 ......................................................................40, 42

N.M. Stat. § 37-1-4 ...................................................................................48

N.M. Stat. § 57-1-12 .................................................................................48

N.M. Stat. § 57-12-4 .................................................................................42

N.Y. County Law § 501 .............................................................................29

N.Y. Gen. Bus. Law § 340 ..................................................................27, 48

Neb. Rev. Stat. § 59-821 (2002) ...............................................................27

Neb. Rev. Stat. § 59-829 ............................................................................48

Neb. Rev. Stat. § 59-1612 ..........................................................................48

Nev. Rev. Stat. Ann. § 598A.210 ..............................................................27

Nev. Rev. Stat. § 11.190(2)(d) ...................................................................48

Nev. Rev. Stat. § 598A.220 .......................................................................48

Or. Rev. Stat. § 646.780 .............................................................................27

Or. Rev. Stat. § 646.800 .............................................................................48

R.I Gen. Laws § 6-13.1-4(a) ................................................................40, 42

R.I. Gen. Laws § 6-13.3-1 ..........................................................................42

R.I. Gen. Laws § 6-36-21 ...........................................................................27

R.I. Gen. Laws § 9-1-13 .............................................................................48

S.C. Code Ann, § 39-5-40(a) ...............................................................40, 42

S.C. Code § 39-5-20(b) ...............................................................................42

S.C. Code § 39-5-140 ..................................................................................38

S.C. Code § 39-5-150 ..................................................................................48

S.D. Codified Laws § 37-1-14.4 ................................................................48

Tenn. Code § 47-25-104 .............................................................................48

Tenn. Code § 47-25-106(c) ........................................................................27

Utah Code § 76-10-3109 (2006) ...............................................................27

Utah Code § 76-10-3117 ...........................................................................48

Vt. Stat. tit. 9, § 2453(b) ...........................................................................42

Vt. Stat. tit. 12, § 511 ................................................................................48

W. Va. Code §47-18-11 .............................................................................48

Wis. Stat. § 133.18 ....................................................................................48

**Rules**

Rule 9(b) ...................................................................................3, 8, 36, 45, 49

Rule 12(b)(1) .......................................................................................1, 8, 50

**Periodicals**

*Chicago Tribune* ..................................................................................33, 41

**Other Authorities**

2021-2025 State Solid Waste Management Plan, Kansas Department of Health
and Environment,
https://www.kdhe.ks.gov/DocumentCenter/View/22543/State-Solid-Waste-
Management-Plan-2021-2025-PDF (last visited Mar. 8, 2025) .................................5

Areeda & Hovenkamp, *Antitrust Law* ¶ 1503b1 .......................................10

Ford County Commissioners' Meeting Minutes (Oct. 21, 2024),
https://www.fordcounty.net/AgendaCenter/ViewFile/Minutes/_10212024-517 ...................29

Kansas City, Curbside Recycling, https://www.kcmo.gov/city-hall/trash/recycling
(last visited Mar. 8, 2025) .........................................................................5

Kansas Organization of Recyclers, https://www.kskor.org/Recycling (last visited
Mar. 8, 2025) ........................................................................................5

Missouri Department of Natural Resources, Directory,
https://recyclesearch.com/profile/mo-directory/materials (last visited Mar. 8,
2025) ....................................................................................................5

Missouri State Recycling Program, Office of Administration, Division of General
Services, https://genserv.oa.mo.gov/missouri-state-recycling-program (last
visited Mar. 8, 2025) ..............................................................................5

How to Sort Your Recyclables, City of Dodge City, Kansas,
  https://www.dodgecity.org/157/How-to-Sort-your-Recyclables (last visited
  Mar. 8, 2025)..............................................................................................................31

Recycling – CREW, City of Dodge City, Kansas,
  https://www.dodgecity.org/113/Recycling---CREW (last visited Mar. 8, 2025) .....................5

Recycling, Missouri Dept of Natural Resources, https://dnr.mo.gov/waste-
  recycling/reduce-reuse-recycle (last visited Mar. 8, 2025).......................................................5

Recycling Pledge Form, City of Dodge City, Kansas,
  www.dodgecity.org/DocumentCenter/View/302/Recycling-Pledge (last
  visited Mar. 8, 2025)................................................................................................6

RESTATEMENT (SECOND) OF TORTS § 821B ...............................................................33

Solid Waste Management District Funding Allocations; Waste Reduction, Public
  Education & Grants, Kansas Department of Health and Environment,
  https://www.kdhe.ks.gov/700/Waste-Reduction-Public-Education-Grants (last
  visited Mar. 8, 2025)................................................................................................5

**Constitutional Provisions**

U.S. CONST. amend. I .............................................................................................32, 40

U.S. CONST. amend. XI.................................................................................................30

## PRELIMINARY STATEMENT

Plaintiffs seek to impose liability on ten Defendants based on an innocuous and socially beneficial activity: the promotion of recycling.[1] Framed as a three-prong challenge under antitrust law, public nuisance, and consumer fraud law, the gist of the Amended Complaint ("**AC**") (Dkt. No. 48) is that Defendants allegedly entered into a conspiracy to promote plastic recycling in an effort to increase the demand and price for plastic. Each prong of Plaintiffs' theory fails as a matter of law. The law does not prohibit Defendants from making statements that the federal government and government entities in Missouri and Kansas have been making for decades and which, according to Plaintiffs, led to increased output with no agreement to refrain from price competition.

These claims make no sense and fail from the start. Indeed, *none* of the Defendants sold any of the plastic products that Plaintiffs allege they bought; and, some Defendants did not even make the plastic resins used to make end-use plastic products at all. Not surprisingly, Plaintiffs do not allege that they ever saw—let alone relied on—any of the alleged misstatements. Nor do Plaintiffs even attempt to explain how a handful of alleged decades-old statements by Defendants about recycling, as opposed to the many governmental regulations requiring recycling labeling or millions of non-party statements promoting recycling, caused the price of plastic products to increase. All of Plaintiffs' claims should be dismissed for several reasons.

*First*, Plaintiffs lack Article III standing because they do not allege concrete, materialized injury, and their allegations lack a plausible causal connection to their purported harm.

*Second*, Plaintiffs' antitrust claims fail because they do not allege *any* restraint of trade. While Section 1 of the Sherman Act prohibits agreements in restraint of trade, the AC is devoid of

---

[1] Defendants do not submit to the personal jurisdiction or venue of this Court. Rather, Defendants filed their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint Pursuant to Rule 12(b)(2) as their "first responsive pleading," thereby preserving that defense. *See, e.g.*, *Blessing v. Chandrasekhar*, 988 F.3d 889, 899 (6th Cir. 2021).

any allegations that Defendants agreed to, or actually did, restrict output, fix prices, or partake in any conduct that would diminish competition for the sale of plastics. Instead, Plaintiffs allege that output *increased*—as they must to support their public nuisance claim—which is a *procompetitive* effect and thus benefits consumers. Without a restraint pled, there can be no Sherman Act violation.

Plaintiffs also fail to plausibly allege any agreement between Defendants, let alone one that unreasonably restrains trade. There is not one well-pleaded allegation to support what Defendants purportedly agreed to do. Plaintiffs provide no details on what the alleged agreement was, when this agreement was supposedly made, who made it, or any other specifics. There can be no conspiracy claim without a well-pleaded agreement. The purported effect of the alleged conspiracy is also entirely implausible. According to the threadbare allegations, Defendants' conspiracy to promote recycling purportedly led to increased demand for plastics, which Plaintiffs claim increased the prices for plastic products. But Plaintiffs allege no facts plausibly demonstrating that any rise in demand was linked to the alleged conspiracy, or how such an increase in demand would diminish competition. Plaintiffs also fail to demonstrate how a few decades-old statements by resin manufacturers dictated today's prices for resins used to make any plastic product.

Plaintiffs' market definition similarly makes no sense. A market including all plastic products for end use is not viable because it is not tethered to the interchangeability of products within the alleged market. Plaintiffs make no attempt to allege that all end-use plastic products are interchangeable, nor could they, as a plastic bottle is not interchangeable with a plastic truck. Nor do they attempt to allege that products intended for precisely the same use as a plastic product cannot be interchangeable simply because they are made of a different material, such as a glass bottle or paper packaging. No court has ever recognized such a market. Moreover, by Plaintiffs' own admission, most, if not all, of Defendants' conduct occurred in the context of lobbying and is

immunized from antitrust scrutiny under the *Noerr-Pennington* doctrine. Further, Plaintiffs lack antitrust standing. Plaintiffs have not adequately alleged antitrust injury, a necessary prerequisite to antitrust standing, because they have not plausibly alleged Defendants' challenged conduct caused competitive harm in the market for "plastic products for end use consumption" or that Plaintiffs' injury flowed from any such harm. Plaintiffs are also not "proper parties" because their injuries are remote and lack a causal connection to Defendants' alleged conduct.

*Third*, Plaintiff Ford County's public nuisance claim fails because Ford County is not authorized to bring the claim, which is why the Attorney General of Kansas has intervened to oppose it. The claim also fails for lack of standing, and because Defendants' conduct is lawful and protected, not sufficiently frequent or continuous to be a nuisance, and not the proximate cause of Ford County's purported harm. Further, the AC fails to allege how promoting recycling could lead to more garbage, rather than more recycling and less garbage. Moreover, blaming Defendants for promoting and selling a legal product—recyclable resin—that is used by third parties for their own intended purposes cannot support a public nuisance claim under well-established law.

*Fourth*, Plaintiffs' consumer fraud claims fail because they do not plead them with the required Rule 9(b) particularity, identify any actionable deception by any Defendant, or plausibly connect any such deception to the increased plastics prices they allegedly paid. Entirely missing from the AC is any information on Plaintiffs' own plastics purchases—it does not allege that any Plaintiff saw, let alone relied on, any of Defendants' decades-old statements; nor does it allege that Plaintiffs actually purchased products made of unrecyclable plastic material. Plaintiffs' claims also fail for lack of standing and on additional, state-specific grounds.

*Fifth*, Plaintiffs' unjust enrichment claim fails because Plaintiffs purport to bring this claim on behalf of a multi-state class without specifying the applicable law, and Missouri law cannot be

applied extraterritorially. Regardless of what law applies, it is not pled with specificity, it is precluded by adequate legal remedies, and there was no benefit conferred by Plaintiffs or received by Defendants. Additionally, some states prohibit recovery by indirect purchasers or do not recognize unjust enrichment as an independent cause of action at all.

*Sixth*, Plaintiffs' claims are all time-barred and cannot be saved by tolling.

Some complaints—like this one—are so disconnected from law and logic that they must be dismissed. As the Supreme Court noted, "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). This is precisely such a case. Notwithstanding the sprawl of allegations, there is no valid legal theory here and thus the Court should dismiss the AC in its entirety with prejudice.

## FACTUAL BACKGROUND

Exxon Mobil Corporation, Chevron Phillips Chemical Company LP, Chevron U.S.A. Inc., DuPont de Nemours, Inc., Celanese Corporation, Dow Inc., The Dow Chemical Company, Eastman Chemical Company, and LyondellBasell Industries, N.V. (the "**Corporate Defendants**") do not manufacture consumer plastic products. Instead, certain of the Corporate Defendants sell plastic resin pellets—*i.e.*, small plastic granules, the size of a few millimeters—to other non-party companies that melt down and transform the pellets into finished products that are sold to consumers.[2] The Corporate Defendants do not sell plastic resin pellets to consumers, nor do they have any control over how other companies use the pellets or what recyclability claims those companies may make.

---

[2] Although the AC suggests that Chevron U.S.A. Inc., DuPont de Nemours, Inc., and Celanese Corporation are manufacturers of the plastic resin at issue in this case, that is incorrect.

4

For decades, trade associations and government entities across the country—including the States of Missouri and Kansas, and the federal government—have actively promoted and mandated recycling.[3] Missouri and Kansas have allocated millions of dollars to support the recycling facilities located in their states.[4] Missouri and Kansas also require manufacturers selling products in their states to utilize the Resin Identification Code ("**RIC**") system and "chasing arrows" logo to assist consumers in recycling plastic products. Mo. Rev. Stat. § 260.281; Kan. Stat. § 65-3425. Indeed, Missouri and Kansas prominently display the "chasing arrows" logo on their state-administered recycling websites and non-profit affiliate websites.[5] Further, Kansas City (where Plaintiff Billie Rodriguez resides) offers curbside recycling for "bottles and tubs displaying a #1, #2, #4 or #5 resin code,"[6] and Missouri's Department of Natural Resources website identifies locations across the state for recycling of more than twenty-four different types of plastics.[7] Similarly, Dodge City, Kansas—Ford County's largest city and county seat—has a website that guides the public on properly sorting recyclables, including plastic.[8] Dodge City urges its citizens

---

[3] *See* Recycling, Missouri Dept. of Natural Resources, https://dnr.mo.gov/waste-recycling/reduce-reuse-recycle (last visited Mar. 8, 2025). The Court may take judicial notice of information on government websites cited in this Motion as their contents are "not subject to reasonable dispute." *Mis. for Fiscal Acct. v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016); *infra* fn. 4–9, 32, 34, 36, 39, 47.

[4] *See* Solid Waste Management District Funding Allocations; Waste Reduction, Public Education & Grants, Kansas Department of Health and Environment, https://www.kdhe.ks.gov/700/Waste-Reduction-Public-Education-Grants (last visited Mar. 8, 2025); 2021-2025 State Solid Waste Management Plan, Kansas Department of Health and Environment, https://www.kdhe.ks.gov/DocumentCenter/View/22543/State-Solid-Waste-Management-Plan-2021-2025-PDF (last visited Mar. 8, 2025).

[5] *See* Missouri State Recycling Program, Office of Administration, Division of General Services, https://genserv.oa.mo.gov/missouri-state-recycling-program (last visited Mar. 8, 2025); Kansas Organization of Recyclers, https://www.kskor.org/Recycling (last visited Mar. 8, 2025).

[6] *See* Kansas City, Curbside Recycling, https://www.kcmo.gov/city-hall/trash/recycling (last visited Mar. 8, 2025).

[7] *See* Missouri Department of Natural Resources, Directory, https://recyclesearch.com/profile/mo-directory/materials (last visited Mar. 8, 2025).

[8] *See* Recycling – CREW, City of Dodge City, Kansas, https://www.dodgecity.org/113/Recycling---CREW (last visited Mar. 8, 2025).

to take a "recycling pledge," in which they promise to: (1) "lead by example" by recycling; (2) "email . . . elected officials to ask them to increase" recycling funding; and (3) tell others "that recycling is the easiest thing they can do to slow global warming."[9] And that is against a backdrop where Congress has "declare[d] it to be the national policy of the U.S. that pollution should be prevented or reduced at the source whenever feasible; pollution that cannot be prevented should be recycled in an environmentally safe manner whenever feasible." 42 U.S.C. § 13101(b).

Plaintiffs bring this lawsuit against the Corporate Defendants and a trade association, American Chemistry Council ("**ACC**,"[10] collectively, "**Defendants**"). *See* AC ¶¶ 24–33. Plaintiffs do not allege the Corporate Defendants have any connection with each other, but rather that they are among the hundreds of members of the ACC, or other various trade associations. *Id.* ¶ 33.

Plaintiffs assert that as a result of Defendants' alleged conspiracy, they purchased plastic products at higher prices. *Id.* ¶¶ 3, 173. Defendants allegedly perpetrated this conspiracy by making deceptive public statements about recycling. The AC identifies less than a dozen such statements, allegedly made by certain Defendants and various trade associations, almost all of which were made in the 1980s or 1990s. AC ¶¶ 93–94, 104, 112–13, 115, 150–52. The challenged statements fall into three categories: (1) statements about recycling initiatives that do not comment on the recyclability of any products ("**Recycling Initiative Statements**"), *id.* ¶¶ 93, 94, 112–13, 115; (2) statements that reference the recyclability of product types, but say nothing about whether those product types will in fact be recycled ("**Recyclability Statements**"), *id.* ¶¶ 112, 115, 150–52; and (3) a statement about a forward-looking environmental goal to achieve a certain recycling rate ("**Aspirational Statement**"), *id.* ¶ 104. Plaintiffs do not allege they ever saw or relied on these

---

[9]    *See* Recycling Pledge Form, City of Dodge City, Kansas, www.dodgecity.org/DocumentCenter/View/302/Recycling-Pledge (last visited Mar. 8, 2025).
[10]  ACC has never manufactured, sold, or distributed plastic resins (or any type of plastic product).

statements when purchasing plastic products, or even knew that Defendants' resins[11] were contained in any products they purchased. Indeed, Plaintiffs do not allege reliance on any statement by *anyone* regarding recycling. Plaintiffs also do not explain how pro-recycling statements from the 1980s and 1990s influenced the price of the plastic products they purchased in the present day.

The AC asserts forty-six causes of action, which can be summarized as follows: violations of antitrust law ("**Antitrust Claims**"), including violations of federal law (Count 1) ("**Federal Antitrust Claim**") and state antitrust laws (Counts 18–45) ("**State Antitrust Claims**"); public nuisance (Count 2); violations of consumer protection and deceptive trade practices laws (Counts 3–17) ("**Consumer Fraud Claims**"); and unjust enrichment (Count 46). Plaintiffs purport to bring Count 1 on behalf of a nationwide class of both consumers and government entities (other than entities within California); Count 2 on behalf of a nationwide class of government entities (other than those within California); and Counts 3–46[12] on behalf of a subclass of consumers and government entities from thirty-four states and the District of Columbia. *Id.* ¶¶ 161–63.[13]

## LEGAL STANARD

Plaintiffs bear the burden of demonstrating that they have Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). Standing is necessary for each plaintiff, "for each claim [a plaintiff] seeks to press[,] and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008). To satisfy Article III, Plaintiffs must demonstrate for every claim "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "For causation to exist, the injury has to be fairly traceable to the

---

[11] Here and throughout, reference to "Defendants' resins" is not intended to suggest that ACC, Chevron U.S.A. Inc., or DuPont de Nemours, Inc. manufactured plastic resin.

[12] Plaintiffs fail to specify on behalf of which class they purport to bring Count 46, but Defendants presume it is on behalf of the subclass.

[13] To assist the Court in its analysis, Defendants have included a chart providing all of the claims asserted by Plaintiffs, and the applicable defenses to each. *See* Exhibit 1.

challenged action of the defendant, and not the result of the independent action of some third party not before the court." *AGRED v. U.S. Army*, 3 F.4th 1069, 1073 (8th Cir. 2021). While "[a]bsolute certainty is not required in proving a causal connection . . . , the evidence must bring the causal connection beyond 'the nebulous twilight of speculation, conjecture and surmise.'" *Howard v. Mo. Bone*, 615 F.3d 991, 996 (8th Cir. 2010). Also, Rule 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, because Plaintiffs' Consumer Fraud Claims and unjust enrichment claim sound in fraud, they must also satisfy Rule 9(b)'s heightened pleading standard. *Streambend v. Ivy Tower*, 781 F.3d 1003, 1012 (8th Cir. 2015).

## ARGUMENT

### I. PLAINTIFFS LACK ARTICLE III STANDING (ALL COUNTS)

Plaintiffs allege that Defendants conspired to increase the demand for and price of plastics by making public statements supporting plastic recycling. Plaintiffs' allegations and theory of deception are pure "conjecture and surmise," and lack any plausible causal connection to Plaintiffs' purported harm. *Howard*, 615 F.3d at 996; *Iqbal*, 556 U.S. at 679 (in assessing such allegations, courts "draw on [their] judicial experience and common sense").

As the AC makes clear, for decades the federal and state governments—including Missouri and Kansas—have actively endorsed and mandated recycling. *See* AC ¶ 95. Conversely, the AC identifies only a few sparse and vague statements that some (but not all) Defendants made about recycling decades ago. Plaintiffs do not allege that Defendants' statements differed from or were contradictory to the governments' positions on recycling. *Id.* ¶¶ 75, 102, 113. Plaintiffs allege no facts to support the theory that these statements caused the increase in demand for, or any change to the price of, plastic—rather than other factors, including consumer preference and the pervasive recycling endorsements and mandates that the state and local governments (and countless third

parties) have and continue to make. *Thompson v. Genesco, Inc.*, 2024 WL 81187, at *6 (E.D. Mo. Jan. 8, 2024). Further, Plaintiffs' entire causal theory rests on the assumption that consumers' purchasing patterns are motivated by whether a product can be recycled. However, as Plaintiffs concede, consumers make purchasing decisions for a variety of reasons, most notably related to the product itself, rather than the container or packaging in which the product is sold. AC ¶¶ 63–65. Plaintiffs have not and cannot plausibly allege a causal relationship between consumers' decisions to purchase plastic products and Defendants' decades-old statements as part of that decision. It is thus not surprising that the AC does not identify a single statement any Defendant allegedly made that Plaintiffs relied on when deciding to purchase any plastic product.

The challenged statements are also too attenuated from Plaintiffs' purported harm in light of the many "independent actions" by immeasurable "third part[ies] not before the [C]ourt." *Lujan*, 504 U.S. at 560. In addition to the governments' recycling endorsements and manifold consumer preferences, the demand and price of plastics are determined by the many independent actors in the supply chain (and their competitors)—not Defendants, who are merely some of the many manufacturers of plastic resins. *Swartz v. Coca-Cola*, 2023 WL 4828680, at *4 (N.D. Cal. July 27, 2023) ("It also bears mention that the consumer deception alleged in the FAC is tied to forces and circumstances well beyond defendants' control . . . . The plausibility of holding defendants to account for statements made in such volatile circumstances is not at all clear in the FAC.").

Indeed, Plaintiffs fail to explain how allegedly increasing the demand for plastic products increased the price, especially given Plaintiffs' separate allegations that the supply of plastic products "exponentially increase[d]." *See, e.g.*, AC ¶¶ 2, 6. Nor do Plaintiffs explain how the supposedly inflated prices for Defendants' resins were "passed on to each plaintiff through each of the various intermediate levels of the distribution chain." *In re Hard Disk Drive Suspension*

*Assemblies Antitrust Litig.*, 2020 WL 6270948, at *2 (N.D. Cal. Oct. 23, 2020). These deficiencies are fatal to establishing traceability. *Id*. at *3 (dismissing indirect purchasers' antitrust, consumer fraud, and unjust enrichment claims because the complaint pled no facts identifying the participants in the distribution chain or establishing "that each participant in the chain necessarily passed on the asserted overcharge to the next participant"); *AGRED*, 3 F.4th at 1073.

Plaintiffs' purported harm is not fairly traceable to any alleged deceptive statement or the alleged conspiracy, and Plaintiffs thus do not have standing for any of their claims.

## II.    PLAINTIFFS FAIL TO STATE ANY ANTITRUST CLAIM (COUNTS 1, 18–45)

### A.    Plaintiffs Fail to Allege Any Restraint of Trade

Section 1 of the Sherman Act prohibits conspiracies "in restraint of trade." 15 U.S.C. § 1; *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493 (1940) (discussing the purpose of Section 1 as "the prevention of restraints to free competition in business and commercial transactions"); *Associated Radio Serv. Co. v. Page Airways, Inc*., 624 F.2d 1342, 1353 n.20 (5th Cir. 1980) ("[A] 'restraint of trade' . . . tends to restrict or otherwise control free and open competition.").

Missing from the AC, however, are any allegations that Defendants' conduct restrained trade at all. At best, Plaintiffs allege Defendants misled the public about the recyclability of plastics, which supposedly increased demand and made consumers willing to pay higher prices for plastic products. But where is the *restraint*? Plaintiffs do not allege that Defendants agreed to, or actually did, restrict output of their products or otherwise diminish competition with one another to sell plastic, such as agreeing not to compete on price. To the contrary, Plaintiffs allege that Defendants *increased* the output of plastics products, AC ¶ 6—as they must for their public nuisance claim—which is indicative of a *procompetitive* marketplace. Areeda & Hovenkamp, *Antitrust Law* ¶ 1503b1 (noting an "increase in marketwide output is presumptively procompetitive"); *Cal. Dental v. FTC*, 526 U.S. 756, 775 (1999); *Chi. Pro. Sports v. NBA*, 95 F.3d

593, 597 (7th Cir. 1996) ("The core question in antitrust is output. Unless a contract reduces output in some market, to the detriment of consumers, there is no antitrust problem."). Plaintiffs also do not allege that Defendants agreed to, or did, fix the price of resins or refrain from price competition in any way. Absent any such conduct, trade is not restrained and there can be no Sherman Act violation. Lastly, Plaintiffs do not allege that Defendants' purported statements in any way excluded competition from innovators or rivals offering a competitive product.

Courts have consistently refused to permit antitrust claims predicated on an alleged conspiracy to engage in false or misleading statements: "the remedy is not antitrust litigation, but more speech—the marketplace of ideas." *Santana v. Bobrick*, 401 F.3d 123, 132–34 (3d Cir. 2005) ("Santana's allegations of fraud . . . are irrelevant because deception, reprehensible as it is, can be of no consequence so far as the Sherman Act is concerned."); *Ariz. v. Cook*, 391 F. Supp. 962, 970 (D. Ariz. 1975) ("[False advertising] conspiracy alleged here is not a 'conspiracy in restraint of trade' within the purview of Section 1 of the Sherman Act."), *aff'd*, 541 F.2d 226 (9th Cir. 1976). "Far from undermining competition, false statements 'set the stage for competition.'" *GDHI Mktg. v. Antsel*, 416 F. Supp. 3d 1189, 1201–02 (D. Colo. 2019). Plaintiffs' Antitrust Claims thus rest entirely on allegations of supposedly false commercial speech—which cannot constitute actionable restraints of trade under the antitrust laws. *See id.* at 1202 ("[E]ven demonstrably false commercial speech is not actionable under the antitrust laws."); *Sanderson v. Culligan Int'l*, 415 F.3d 620, 624 (7th Cir. 2005) ("Commercial speech is not actionable under the antitrust laws.").

### B. Plaintiffs Fail to Plead an Agreement

Apart from the absence of any restraint, Plaintiffs separately fail to adequately plead an *agreement* that restrains trade—the "crucial" element of a Section 1 conspiracy claim. *Twombly*, 550 U.S. at 553. As a threshold matter, Plaintiffs fail to meet the requirement of pleading specificity because they impermissibly lump together and make sweeping generalizations about

all "Defendants." In addition, Plaintiffs fail to plead direct evidence of an unlawful agreement, or circumstantial evidence from which this Court can infer one. These pleading deficiencies also doom Plaintiffs' state law claims. *Hobart-Mayfield v. Nat'l Op. Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022) (state law antitrust claims "prevail or fail in tandem with federal antitrust claims"); *Insulate SB v. Adv. Finishing*, 797 F.3d 538, 547 (8th Cir. 2015) (same).

1.    Plaintiffs Rely on Improper Group Pleading

Plaintiffs fail to plausibly allege an agreement because they rely on improper "group pleading" rather than alleging facts about which specific Defendants agreed to what and when. Plaintiffs allege that "Defendants," as an undifferentiated group, entered into a conspiracy. *See* AC ¶¶ 2, 8, 11, 155, 179. But Plaintiffs are required to allege the details concerning how and when *each* Defendant entered and participated in the alleged conspiracy. For some Defendants,[14] Plaintiffs allege no specific conduct at all. Such generic pleading "[w]ithout some supporting factual allegations" as to each Defendant is insufficient. *Insulate*, 797 F.3d at 546. "*Twombly* makes clear that at the pleading stage in an antitrust case, each defendant is entitled to know how it is alleged to have conspired, with whom, and for what purpose. . . . When alleging a conspiracy, the law is clear that '[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful,' and 'a complaint based on a theory of collective responsibility must be dismissed.'" *In re Crop Inputs Antitrust Litig.*, 2024 WL 4188654, at *8 (E.D. Mo. Sept. 13, 2024); *see also Twombly*, 550 U.S. at 556 (holding that a § 1 claim "requires a complaint with enough factual matter, taken as true, to suggest that an agreement was made"). Thus, Plaintiffs' group pleading allegations are properly ignored for purposes of their effort to state a claim.

---

[14] For example, the AC identifies Chevron Phillips Chemical Company LP in only three paragraphs (AC ¶¶ 26, 218, 233), without any allegations of specific wrongful conduct or deceptive statements by it. The AC similarly only mentions LyondellBasell Industries, N.V. and Celanese Corporation a handful of times and fails to identify any specific wrongdoing or deceptive statements by them.

2.     Plaintiffs Have Not Pleaded Direct Evidence of an Unlawful Agreement

Plaintiffs have not alleged direct evidence of an unlawful agreement between Defendants, *i.e.*, a "smoking gun" allegation that requires no inferences to establish an agreement. *Impro Prods. v. Herrick*, 1982 WL 1883, at *3 (S.D. Iowa Aug. 13, 1982), *aff'd*, 715 F.2d 1267 (8th Cir. 1983). To plead an agreement directly, Plaintiffs "cannot simply incant the magic words 'conspiracy' or 'agreement.'" *Buetow v. A.L.S.*, 564 F. Supp. 2d 1038, 1041 (D. Minn. 2008). Here, Plaintiffs point to no documents or statements evidencing any agreement. The "pleadings mention[] no specific time, place or person involved in the alleged conspiracies." *Id.*; *Five Smiths, Inc. v. Nat'l Football League*, 788 F. Supp. 1042, 1048 (D. Minn. 1992) (holding conspiracy allegations "too vague" where plaintiffs failed to assert specific facts about actions taken and agreements entered into).

3.     Plaintiffs Have Pleaded No Circumstantial Evidence From Which This Court May Infer an Unlawful Agreement

Absent direct evidence of a conspiracy, Plaintiffs must plead facts that raise a plausible *inference* of conspiracy (*i.e.*, circumstantial evidence). *Twombly*, 550 U.S. at 556. To establish a conspiracy by circumstantial evidence, the Eighth Circuit requires plausible allegations of both "parallel conduct" and "plus factors." *Blomkerst v. Potash*, 203 F.3d 1028, 1033 (8th Cir. 2000). "[P]arallel conduct on its own" and "plus factors without plausible allegations of parallel conduct are insufficient to establish an inference of an agreement." *In re Pork*, 2019 WL 3752497, at *7 (D. Minn. Aug. 8, 2019) (citing *Park v. Express*, 911 F.3d 505, 517 (8th Cir. 2018)). Here, the AC fails to adequately plead either.

i     Plaintiffs Fail to Plead Parallel Conduct

To plausibly allege parallel conduct, Plaintiffs must provide a "basis to analyze which, how many, or when any of the individual Defendants" acted. *In re Pork*, 2019 WL 3752497, at *8. Generalized "industry-wide data and public statements made by some of the individual

13

Defendants" are insufficient. *Id.* Plaintiffs here do not allege facts showing any parallel behavior indicative of any conspiracy. At best, Plaintiffs point to a small handful of public statements by third-party trade associations over many decades. But such allegations are sparse and conclusory, and do not demonstrate that Defendants acted in parallel.

*First*, Plaintiffs' allegations lack the requisite "temporal proximity" to establish parallel conduct. *Park*, 911 F.3d at 516. Here, the challenged statements by Defendants and trade associations span decades. For example, Plaintiffs point to the proliferation of recycling-oriented trade groups, but Plaintiffs fail to allege that all Defendants were even members of these groups, and these groups were created at different times over several decades. AC ¶ 90. Moreover, mere membership in a trade organization that took certain actions is not evidence that the organization's members conspired to engage in those actions. *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) ("[Not] every action by a trade association is . . . concerted action by the association's members."). Plaintiffs also point to alleged advertising by third-party organizations (again, not by any specific Defendants), but this advertising occurred at various times across decades. AC ¶¶ 93, 112–13. There is simply no indication that these actions were coordinated and "calling this conduct 'parallel' is a stretch." *LLM Bar v. Barbri*, 271 F. Supp. 3d 547, 579 (S.D.N.Y. 2017) (holding there is no indication of parallel conduct where alleged actions took place "at different times over the span of several years"); *see also Park*, 911 F.3d at 516–17 (affirming dismissal where alleged parallel conduct was six months apart).

*Second*, Defendants' alleged statements vary in substance. For example, the AC includes a purported magazine advertisement about the "urgent need to recycle," followed by an alleged statement that Mobil was "venturing into recycling" and would adhere to EPA recommendations. *See* AC ¶¶ 93–94. These statements are different and are not allegations of

parallel conduct. One is aimed at the public encouraging specific action, while the other is a statement about a company's plans, with no indication that it was intended to influence anyone.

**Third**, Plaintiffs do not even allege that all Defendants made such public statements. As discussed in Section II.B.1, Plaintiffs rely on conclusory and impermissible group pleading, with most allegations naming actions taken by "Defendants" or "the plastics industry" at large. Such allegations provide no basis to determine whether any Defendant engaged in parallel behavior.

ii      <u>Plaintiffs Fail To Allege Any "Plus Factors"</u>

"Because [Plaintiffs] fail[] to plausibly plead parallel conduct, no discussion of any 'plus factors' is necessary" and the Antitrust Claims should be dismissed. *Park*, 911 F.3d at 516–17. However, the Antitrust Claims also fail because Plaintiffs do not adequately plead the requisite plus factors. Plus factors "are economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated conduct" that thus permit an inference of a preceding agreement. *Id*. Plus factors can include "(1) a shared motive to conspire; (2) action against self-interest; (3) market concentration; and (4) a high-level of interfirm communication." *Id*. Without plus factors, parallel conduct may just as easily be "in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 550 U.S. at 554. Plaintiffs have not adequately pled any plus factor. The AC is devoid of any claim that the alleged market is concentrated and, as to the other three factors, the allegations demonstrate no more than common and lawful business practices.

**First**, the AC does not establish that Defendants took any action against self-interest. To the contrary, it provides lawful and independent business reasons for Defendants' actions. According to the AC, Defendants faced immense public backlash regarding plastic products and sought "to prevent bans on single-use plastics." AC ¶ 117. If true, the promotion of recycling by any Defendant (consistent with the government's heavy promotion of it) would be a logical,

unilateral business response to this increased scrutiny—not evidence of an anticompetitive conspiracy. *In re Musical Instruments Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) ("[F]irms may arrive at identical decisions independently, as they are cognizant of—and reacting to—similar market pressures."); *CVB v. Corsicana*, 2024 WL 4505044, at \*8 (D. Utah Oct. 16, 2024) (finding no "conspiracy to mislead consumers" where plaintiff did not sufficiently allege that defendants' statements were "plausibly motivated by an illicit conspiracy to restrain trade rather than part of the normal course of [d]efendants' businesses"). Plaintiffs allege no behavior that is *inconsistent* with any Defendant's independent self-interest.

**Second**, common business motives alone do not support an inference of conspiracy. *Serfecz v. Jewel*, 67 F. 3d 591, 600–01 (7th Cir. 1995). A common motive to increase profits is not a "plus" factor, because that interest is "universally shared by all businesses." *Bookends & Beginnings LLC v. Amazon.com*, 2022 WL 18144916, at \*9 (S.D.N.Y. Aug. 24, 2022). In addition, plastic recycling was touted by innumerable entities (including the government) that were not engaged in the alleged conspiracy and did not benefit from the sale of plastics—underscoring that such promotion was a rational response to public concerns, rather than evidence of any conspiracy.

**Third**, Plaintiffs devote much of the AC to the unremarkable allegation that Defendants participate in trade associations and industry events. But "[m]ere membership in a trade association will not nudge an allegation from the realm of parallelism to the land of agreement." *In re Foods, Inc. Sec. Litig.*, 275 F. Supp. 3d 970, 995 (W.D. Ark. 2017); *In re Crop Inputs*, 2024 WL 4188654, at \*12 ("[C]ommon membership on a board or participation in a trade association is not indicative of an illegal conspiracy."); *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 2025 WL 606533, at \*17 (N.D. Ohio Feb. 25, 2025) ("[T]he Court follows the well-trodden path of other courts in concluding that defendants' mere attendance at these trade association meetings

contributes little, if anything, to the plausibility of the alleged conspiracy."). As the Supreme Court explained, defendants should not have to "devote financial and human capital to hire lawyers, prepare for depositions, and otherwise fend off allegations of conspiracy" because they are members of the same trade associations or attend industry events. *Twombly*, 550 U.S. at 567 n.12. Here, Plaintiffs' allegations amount to a speculative "same time, same place" theory that is insufficient as a matter of law to establish conspiracy. *In re Chocolate*, 801 F.3d 383, 409 (3d. Cir. 2015) (evidence that executives at trade show meetings "were in the same place at the same time . . . [is] insufficient to support a reasonable inference of concerted activity").

### C.    Defendants' Conduct is Immune Under the *Noerr-Pennington* Doctrine

Under the *Noerr-Pennington* doctrine, the Supreme Court has "immunized from antitrust scrutiny" lobbying efforts, including "attempts to induce the passage or enforcement of law or to solicit government action." *Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 486 (8th Cir. 1985). *Noerr-Pennington* immunity extends to private actions, if they are "incidental to a valid effort to influence governmental action." *Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 500 (1988). And "[a] publicity campaign directed at the general public, seeking legislative or executive action, enjoys antitrust immunity even when the campaign employs unethical and deceptive methods." *Id.* at 499–500.

Here, Plaintiffs allege that much, if not all, of Defendants' conduct was protected speech made in the lobbying context "to defend the plastics industry from restrictive legislation." AC ¶¶ 6, 61–62, 67–68, 85, 97, 99, 116–17. Under *Noerr-Pennington* immunity, this speech cannot form the basis of the Antitrust Claims. Plaintiffs make no effort to distinguish the effects of these lobbying efforts from any other alleged statements that Defendants and others have made. But even if *Noerr-Pennington* immunity only applies to *some* of the alleged misstatements, Plaintiffs' claims still fail because they have not alleged effects isolated only to the alleged conduct that does

not comprise protected speech. *Concord v. Brunswick*, 207 F.3d 1039, 1057 (8th Cir. 2000).

**D.     Plaintiffs Do Not Plausibly Allege an Unreasonable Restraint of Trade**

The Antitrust Claims also fail because Plaintiffs have not plausibly alleged that any such restraint is *unreasonable*. To assert a Section 1 violation, Plaintiffs must also plead the requisite elements under the "rule of reason," the standard "according to which the finder of fact must decide whether [Defendants'] questioned practice imposes an unreasonable restraint on competition." *Double D Spotting Serv. V. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1999).[15] Specifically, Plaintiffs must sufficiently allege: (1) "a relevant market" as to which (2) the allegedly unlawful conduct "has 'detrimental effects' upon the competitiveness of the market." *Craftsmen v. Limousine, Inc.*, 491 F.3d 380, 388 (8th Cir. 2007). Plaintiffs fail to plead both of these elements.

1.     <u>Plaintiffs Fail to Adequately Allege a Relevant Market</u>

***First***, it is Plaintiffs' "burden to define the relevant market." *Double D*, 136 F.3d at 560. The relevant product market is "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962). "The relevant product market includes all reasonably interchangeable products." *Double D*, 136 F.3d at 560. "The failure to allege a product market consisting of reasonably interchangeable goods renders [a complaint] 'facially unsustainable' and appropriate for dismissal." *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011); *E-Z Dock v. Shoremaster*, 2006 WL 1153901, at *2 (W.D. Mo. Apr. 25, 2006) ("[A]n antitrust claim will be dismissed if a complaint fails to allege facts regarding substitute

---

[15] There are a limited category of agreements that are deemed *per se* violations because they are "so plainly anticompetitive and lacking in redeeming virtue that they are conclusively presumed to be illegal" without inquiry into the reasonableness of the restraint. *Five Smiths*, 788 F. Supp. at 1045. Plaintiffs do not allege a *per se* agreement or violation. Nor could they, as an agreement to make supposedly misleading statements about recycling is not the type of concerted action that courts have found to be *per se* unlawful. *Stifel v. Dain*, 578 F.2d 1256, 1259 (8th Cir. 1978).

18

products, to distinguish among apparently comparable products[.]").

Here, Plaintiffs have failed to allege a product market consisting of reasonably interchangeable goods. Plaintiffs' proposed relevant market is "plastics products for end use consumption." AC ¶ 177. Plaintiffs engage in *no* discussion of possible substitutes or comparable products, which is required to delineate which products are reasonably interchangeable, *i.e.*, within the product market. *Monsanto v. Swann*, 2001 WL 34079489, at *3 (E.D. Mo. Sept. 19, 2001) (dismissing broad market for "all cotton seed and all soybean seeds" when plaintiff failed to define the market "with reference to the rule of reasonable interchangeability"); *Process Controls v. Emerson*, 2011 WL 403121, at *4 (E.D. Mo. Feb. 1, 2011) (the product market definition failed because it did not account for reasonable interchangeability of products). For example, Plaintiffs do not explain why an aluminum can or glass bottle of soda are not reasonable substitutes for a plastic soda bottle to a consumer who is choosing the beverage and not the container. Plaintiffs also make no allegations addressing why a cardboard box is not a reasonable substitute for a plastic box, or why a paper plate is not a reasonable substitute for a plastic one.

Plaintiffs also make no allegations establishing that all "plastics products for end-use consumption" are interchangeable with one another. To the contrary, Plaintiffs admit that "[t]here are thousands of different types of plastic, each with its own chemical composition and characteristics" and plastic products "can be separated into certain categories based on their chemical composition and end use." AC ¶¶ 34–43. Plaintiffs allege no facts that could explain, for example, why a consumer who went to a store to purchase water in plastic PET bottles would purchase a polycarbonate food container if the store was out of the former. Plaintiffs also offer no allegations to support the counter-intuitive notion that a plastic bottle competes with a plastic kayak. This is exactly "the type[] of pleading[] that fail[s] to allege a plausible relevant product

market." *Mahaska v. Pepsico*, 271 F. Supp. 3d 1054, 1075 (S.D. Iowa 2017) (dismissing complaint where plaintiff made "no effort to explain its market definition beyond the bare allegation").

### 2. Plaintiffs Fail to Plausibly Allege Detrimental Effects on Competition

Even if Plaintiffs alleged a relevant market, they fail to allege harm to competition in it. Section 1 of the Sherman Act only forbids conspiracies that "impose an unreasonable restraint on competition." *Craftsmen*, 491 F.3d at 386. "To determine the legality of a restraint of trade under the rule of reason, one must focus on the detrimental effects to competition" in the relevant market. *Flegel v. Christian Hosp.*, 4 F.3d 682, 688 (8th Cir. 1993). A plaintiff may allege detrimental effects by (1) putting forth "evidence of 'actual, sustained adverse effects on competition'" or (2) "making 'an inquiry into market power and market structure.'" *Craftsmen*, 491 F.3d at 388.

Plaintiffs have not plausibly alleged any direct actual effect on competition. Plaintiffs make conclusory allegations that the alleged conspiracy "artificially increased" the price and demand of plastic. But, Plaintiffs do not plead facts plausibly establishing either of these effects or that they resulted from the alleged conspiracy, or that competition for sales of plastic was diminished in any way. *Ohio v. Am. Express*, 585 U.S. 529, 549 (2018) ("This Court will not infer competitive injury from price and output data absent some evidence that tends to prove that output was restricted or prices were above a competitive level.").

Plaintiffs allege no facts to support their assertion that Defendants' conduct resulted in higher prices. Plaintiffs do not reference the price of a single plastic product, either before or after the alleged agreement was supposedly formed. Instead, Plaintiffs generically reference the alleged "artificial increase" in *demand* for plastics, *see, e.g.*, AC ¶¶ 172–73, 179, 181, 208, 226, while at the same time conceding that plastics supply has "exponentially increase[d]" over the last six

decades, *id.* ¶ 6. But this says nothing about price or competitive conditions.[16] *See In re Musical Instruments*, 798 F.3d at 1197 n.13 (affirming dismissal of antitrust claim where "[a]ny manner of economic variables may have contributed to these fluctuations in prices and sales"). Nor do Plaintiffs allege that Defendants agreed to, or did, fix the price of resins or refrain from competition with respect to resins. Accordingly, Plaintiffs' conclusory price allegations fail to indicate any anticompetitive conduct or effect. *EnviroPAK Corp. v. Zenfinity Cap., LLC*, 2015 WL 331807, *15 (E.D. Mo. Jan. 23, 2015) (granting motion to dismiss where plaintiff failed to "plead factual content which allows the court to draw a reasonable inference" of anticompetitive effect).

Plaintiffs also plead no facts evidencing a causal relationship between any alleged conspiracy and any claimed demand increase. Rather, Plaintiffs plead conclusory allegations about plastic production—a single chart purportedly demonstrating that *global* plastic production has risen over the years accompanied by an assertion that U.S. plastic production has similarly risen. AC ¶¶ 141, 147. But Plaintiffs allege no facts linking any rise in plastic production to the alleged conspiracy. *Craftsmen*, 491 F.3d at 390–91 ("Any action that a profit-seeking business takes could increase its market share relative to some other segment of that market; indeed, most rational businesses actively take such steps at every available opportunity. . . but that alone does not prove an adverse impact upon the competitive process."). In fact, Plaintiffs' allegations confirm that any increase in demand for plastic production was the result of "disposable plastics [] becom[ing] the norm for everything" by the 1960s, which was decades before the alleged conspiracy. AC ¶ 64. Even if Plaintiffs plausibly alleged a causal relationship (they have not), the AC fails to allege facts demonstrating that competition was restrained or diminished by the alleged conspiracy, or that

---

[16] Nor do Plaintiffs address the conventional economic principles that when supply rises with demand, price does not always increase, or that, if supply increases at a rate faster than demand, price may even decrease.

plastic manufacturers did not compete to meet that demand or fight for market share.

Nor do Plaintiffs plead indirect effects on competition, because they allege no facts regarding Defendants' purported market power or the market structure (let alone actually define a relevant market). *See, e.g.*, *Hip Hop Beverage Corp. v. Monster Energy Co*., 2016 WL 7479402, at *4 (C.D. Cal. July 7, 2016) (dismissing Section 1 claim where plaintiffs' "market power allegations [were] largely conclusory and did not provide the requisite detail of market injury or market structure"). Accordingly, Plaintiffs have failed to adequately plead the Antitrust Claims.

### E. Plaintiffs Fail to Plead Antitrust Standing

Plaintiffs separately lack antitrust standing to pursue their claims, which is a threshold requirement at the pleading stage and distinct from constitutional standing. *In re Can. Import Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006). A plaintiff must allege (i) "antitrust injury," *i.e.*, an injury "of the type the antitrust laws were intended to prevent and that flows from that which makes or might make defendants' acts unlawful," and (ii) that plaintiff is a "proper party to bring a private antitrust action," or an "efficient enforcer" of the antitrust laws. *McDonald v. J&J*, 722 F.2d 1370, 1374 (8th Cir. 1983); *Midwest Commc'ns v. Minn. Twins, Inc*., 779 F.2d 444, 451 (8th Cir. 1985). Plaintiffs fail to plead facts alleging either of these two standing requirements.

### 1. Plaintiffs Have Not Plausibly Alleged Antitrust Injury

Even if Plaintiffs believe they were harmed in some manner by Defendants' alleged conduct, that is not the relevant question for antitrust injury purposes. *Goldfinch v. Iowa Pathology*, 2024 WL 5205936, at *4 (S.D. Iowa Dec. 13, 2024). The relevant question is whether Defendants' alleged conduct harmed competition as a whole in the alleged market, and that Plaintiffs' injury flowed from that harm to competition. *Craftsmen*, 491 F.3d at 391.

Plaintiffs have not shown antitrust injury because, as discussed in Sections II.A and II.D, they have not plausibly alleged any harm to competition. Plaintiffs' allegation that Defendants'

conduct was output-*enhancing*—which is indicative of *greater* competition—forecloses them from adequately pleading antitrust injury. *Niemann v. Carlsen*, 2023 WL 4198227, at \*10 (E.D. Mo. June 27, 2023). Nor can Plaintiffs' antitrust injury be predicated on Defendants' allegedly false or misleading statements, which "set the stage for competition." *GDHI Mktg.*, 416 F. Supp. 3d at 1201–02; *Harrison v. Aerostar*, 316 F. Supp. 2d 186, 221–22 (E.D. Pa. 2004) ("[Where] Plaintiff[s'] damages, if any, arise out of fraud, Plaintiff[s] ha[ve] not suffered 'antitrust injury.'"). In short, because Plaintiffs have failed to plausibly allege a restraint of trade (much less an "unreasonable" restraint), they cannot plausibly allege antitrust injury as a matter of law.

### 2. Plaintiffs Are Not "Proper Parties"

Even if Plaintiffs could allege antitrust injury, they would lack antitrust standing because any claim of theirs is too attenuated and far removed in the distribution chain from Defendants' conduct. In other words, they are not "proper parties" (sometimes referred to as "efficient enforcers") with regard to the asserted antitrust claims. *See Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 540–45 (1983) ("**AGC**"). Whether a plaintiff is a "proper party" is based on six factors:

> (1) The causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) Improper motive; (3) Whether the injury was of a type that Congress sought to redress with the antitrust laws; (4) The directness between the injury and the market restraint; (5) The speculative nature of the damages; (6) The risk of duplicate recoveries or complex damage apportionment.

*McDonald*, 722 F.2d at 1374.[17] Federal courts, including courts in this Circuit, have found that *AGC* applies to all of Plaintiffs' Antitrust Claims, with the exception of Colorado and Minnesota[18]—and even those states require Plaintiffs to plead and demonstrate proximate

---

[17] Factors five and six do not apply in standing determinations for injunctive relief. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 n.6 (1986).

[18] *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d 828, 841 (D. Minn. 2023) (holding all states at issue would apply *AGC*, except for Colorado and Minnesota, and granting dismissal for lack of

causation (the core of the *AGC* test).[19] *Sup. Auto Transp., LLC v. Arcelor Mittal USA*, 902 F.3d 735, 743 (7th Cir. 2018); *State of S.D. v. Kan. City S. Indus.*, 880 F.2d 40, 46 (8th Cir. 1989).[20]

All of the *AGC* factors weigh decidedly against antitrust standing here. **First,** Plaintiffs have not alleged a causal connection between their alleged injuries and Defendants' alleged antitrust violations. Plaintiffs do not allege that they purchased plastic resins from Defendants or that plastic resins manufactured by Defendants were used in the products that Plaintiffs purchased. AC ¶ 177. In fact, Plaintiffs do not even identify what "plastics products" they purchased, from whom, or when. *See, e.g.*, *Sup. Auto Transp., LLC v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1040 (N.D. Ill. 2017) (finding indirect purchasers failed to allege the requisite causal connection under *AGC* where the complaint "did not even identify whether the steel in these products came from defendants' steel mills at all"). Indeed, Plaintiffs' few causation allegations are boilerplate and

---

antitrust standing); *Carefirst of Md., Inc. v. J&J*, 745 F. Supp. 3d 288, 322 (2024) (dismissing state law antitrust claims on antitrust standing grounds after concluding those states either "explicitly apply the factors from *AGC* or use a substantially similar test"). State-by-State Authority on Applicability of the *AGC* Factors is attached hereto as Exhibit 2.

[19] *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007) ("Standing under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law."); Colo. Rev. Stat. Ann. § 6-4-115 ("Any person injured, either directly or indirectly, in its business or property by reason of any violation of this article 4 may sue and, if successful, is entitled to recover any actual damages that the person sustained."); *cf. N. Co. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 904 (Colo. 1996) (holding "proximate cause analysis was appropriate for determining whether unreasonable anticompetitive conduct had occurred").

[20] Specifically, nineteen of the states at issue have explicitly adopted the *AGC* factors or a substantially similar test. These states include: Arizona, California, Connecticut, D.C., Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, and Wisconsin. *See* Exhibit 2. This Court should hold that the remaining seven states would also apply *AGC* in light of the presence of a statutory harmonization provision and the absence of any countervailing statutory or case law. These states include: Hawaii, New Hampshire, Oregon, Rhode Island, Tennessee, Utah, and West Virginia. *Id.*; *In re Dairy Farmers Antitrust Litig.*, 2015 WL 3988488, at *4 (N.D. Ill. June 29, 2015); *Hunter v. Page Cnty., Iowa*, 102 F.4th 853, 866 (8th Cir. 2024) (holding courts must "take their guidance from decisions of the state's highest court" and, where none exist, look to "other reliable indicators of state law, including the decisions of" trial and appellate state courts).

conclusory. *See* AC ¶¶ 173, 175 ("As a direct and foreseeable result, Plaintiffs and the Classes paid supracompetitive prices for plastics during the Class Periods.").

**Second**, Plaintiffs' alleged injuries are highly speculative and attenuated from Defendants' alleged conduct, which would make any damages apportionment enormously difficult. Plaintiffs do not allege that they directly purchased Defendants' plastic resins; rather, they purchased finished products made from plastic. Defendants' resins, at best, might be a component part of the products purchased. Yet, Plaintiffs do not even attempt to describe the complex supply chain for plastic products, or allege which entities—Defendants or intermediaries such as distributors or retailers—actually implemented any alleged price increase. *In re Keurig Green Mountain Antitrust Litig.*, 383 F. Supp. 3d 187, 224 (S.D.N.Y. 2019) (dismissing indirect purchaser antitrust claims because the "conclusory allegations fail[ed] to describe with sufficient factual detail the chain of distribution"). Nor do Plaintiffs explain how such alleged price increases were passed down to consumers. *Sup. Auto*, 902 F.3d at 744 (affirming dismissal because complaint did not "trac[e] the effect of an alleged overcharge on steel"—comprising just "one among many components" of the final products purchased by end users—through "the complex supply and production chain[]").

In short, the prices Plaintiffs paid for a bottle of water or a box of cling wrap are not set by any Defendant, and the effect of Defendants' and other third parties' alleged statements from many decades ago on the prices of the products Plaintiffs purchased in recent years (of which the plastic is often but one component) is sheer speculation. *Ginsburg v. InBev*, 623 F.3d 1229, 1235 (8th Cir. 2010) (affirming dismissal, in part because allegations of "higher retail beer prices" were merely "speculative" where "beer [was] sold to consumers through a three-tier distribution system"). Accordingly, the Antitrust Claims must further be dismissed for lack of antitrust standing.[21]

---

[21] Because the Consumer Fraud Claims are "largely based on anticompetitive conduct," the Court

## F. Additional Independent Grounds to Dismiss the State Antitrust Claims Exist

Indirect purchasers, like Plaintiffs, have no standing to sue for money damages under the Sherman Act, *see Ill. Brick v. Ill.*, 431 U.S. 720 (1977), so Plaintiffs can only seek injunctive relief under the Sherman Act.[22] Plaintiffs also bring damages claims under the laws of 28 states. But the State Antitrust Claims fail for the same reasons their Sherman Act claim fails because the relevant states apply the same standards as federal courts apply under the Sherman Act, with the exception that they do not require plaintiffs to be direct purchasers to recover damages. *Hobart*, 48 F.4th at 663 (holding that state law antitrust claims "prevail or fail in tandem with federal antitrust claims"); *Insulate*, 797 F.3d at 547. These claims also fail for the following additional reasons.

Plaintiffs lack standing to sue under the laws of states where none of the named Plaintiffs reside or were injured. It is well-settled in the Eighth Circuit that "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *In re Pre-Filled Propane Tank Antitrust Litig.*, 2016 WL 6963059, at *7 (W.D. Mo. Jan. 13, 2016).[23] Plaintiffs bring claims under 28 states' antitrust laws, but the named Plaintiffs reside or made purchases in only: California, Florida, Kansas, Missouri, and New York. AC ¶¶ 15–23. Thus, the Court should dismiss the Antitrust Claims under every other state's law.[24]

---

must also dismiss such claims where the corresponding State Antitrust Claim fails for lack of antitrust standing. *In re Cattle*, 687 F. Supp. 3d at 843. Thus, the Court must dismiss Counts 4–5 and 10–15. Because Arkansas, Florida, Massachusetts, Missouri, and Vermont would also apply *AGC* or a similar test, *see* Exhibit 2, Counts 3, 6–8, and 17 must also be dismissed.

[22] It is unclear what injunctive relief Plaintiffs seek and Plaintiffs have not pled facts on continued risk of threatened injury, which is the predicate for such relief under Section 16 of the Clayton Act. Plaintiffs also have not plausibly alleged the alleged conspiracy is ongoing, nor could they given Plaintiffs allege the limitations to recycling are publicly known. AC ¶¶ 43–57.

[23] *Insulate SB. v. Advanced Finishing Sys.*, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2024) (dismissing at pleading stage claims for states in which named plaintiff was not resident and had not suffered injury); *Black v. Moneygram*, 2016 WL 3683003, at *7–8 (E.D. Mo. July 12, 2016).

[24] Certain of the Consumer Fraud Claims must also be dismissed on this basis. The Court should dismiss Counts 3, 5, 7, 9–18, 20–25, 27–35, and 37–45.

Further, under Arizona, Colorado, Connecticut, Hawaii, Minnesota, Nevada, New York, Oregon, Rhode Island, and Utah law, Plaintiffs were required to provide notice and mail a copy of their AC and/or the prior operative complaint to the Attorney General upon filing suit.[25] Because Plaintiffs fail to allege they provided any such notice, their Antitrust Claims (Counts 18, 20–21, 23, 30, 33, 36, 39–40, 43) must be dismissed.[26] Additionally, class action claims brought under Illinois and Tennessee antitrust law (Counts 24, 42) are expressly foreclosed by statute.[27] *See In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1007 (E.D. Mich. 2014).[28]

Lastly, Plaintiffs seek damages dating back to 1990, but many of the state law statutes permitting indirect purchaser recovery were only enacted in recent years,[29] and are not retroactive. *Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d 1001, 1006–07 (8th Cir. 2003) ("A presumption against retroactive legislation is deeply rooted in our jurisprudence."). To the extent Plaintiffs seek damages that pre-date the enactment of these statutes, such claims for damages (Counts 20–21, 28, 32–34, 36, 38–40, 43) must be dismissed.[30]

## III.    FORD COUNTY FAILS TO STATE A PUBLIC NUISANCE CLAIM (COUNT 2)

Ford County is the only Plaintiff that asserts a public nuisance claim, and that claim fails as a matter of law: even the Attorney General of Kansas has intervened in this out-of-state litigation

---

[25] Ariz. Rev. Stat. § 44-1415(A); Colo. Rev. Stat. Ann. § 6-4-116; Conn. Gen. Stat. Ann. § 35-37; Haw. Rev. Stat. § 480-13.3; Minn. Stat. Ann. § 325D.63; Nev. Rev. Stat. Ann. § 598A.210; N.Y. Gen. Bus. Law § 340; Or. Rev. Stat. § 646.780; 6 R.I. Gen. Laws § 6-36-21; Utah § 76-10-3109.

[26] *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416 (D.N.J. 2018); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 375 (D.R.I. 2019).

[27] *See* 740 Ill. Comp. Stat. § 10/7(2); Tenn. Code § 47-25-106(c).

[28] *See also Davenport v. Charter Commc'ns, LLC*, 35 F. Supp. 3d 1040, 1050–51 (E.D. Mo. 2014).

[29] Colo. Rev. Stat. § 6-4-114(1) (enacted in 2023); Conn. Gen. Stat. § 35-46a (2017); Md. Code, Com. Law § 11-209(b)(2) (2017); Neb. Rev. Stat. § 59-821 (2002); Nev. Rev. Stat. Ann. § 598A.210 (1999); N.H. Rev. Stat. § 356:11 (2008); N.Y. Gen. Bus. Law § 340(6) (1998); N.D. Cent. Code. § 51-08.1-08 (1991); Or. Rev. Stat. § 646.780(1)(a) (2010); 6 R.I. Gen. Laws Ann. § 6-36-7(d) (2013); Utah Code § 76-10-3109 (2006).

[30] *See, e.g.*, *In re Opana ER Antritrust Litig.*, 162 F. Supp. 3d 704, 723–24 (N.D. Ill. 2016).

to oppose it. Ford County *cannot bring* a public nuisance claim through private lawyers. Kansas law vests that authority in the County Attorney, and the County Attorney has not authorized Ford County to sue on its behalf or *any other* County's behalf. Nor has any other sub-sovereign across the United States authorized Ford County to bring this lawsuit. The lawsuit filed here is *ultra vires*, and Ford County has no legal authority to bring the claim.

Ford County also fails to plead a viable public nuisance theory. Ford County cannot base a nuisance on the promotion of recycling and sale of lawful plastic products as the conduct is: (1) authorized, encouraged, and in some cases *mandated* by law; (2) not sufficiently frequent or continuous; (3) not a proximate cause of Ford County's alleged unspecified harm; and (4) not in Defendants' control as it relates to plastic waste. Ford County's public nuisance claim is unauthorized and poorly pleaded, and thus should be dismissed with prejudice.

### A. Kansas Law Governs Ford County's Public Nuisance Claim

Courts in Missouri apply the "most significant relationship" test to determine choice-of-law issues, with "a presumption that the state with the most significant relationship is the state where the injury occurred." *Winter v. Novartis Pharms.*, 739 F.3d 405, 410 (8th Cir. 2014). Here, Ford County's alleged injury stems from its claim to have "purchased plastic products in the state of Kansas, and operated a landfill in the State of Kansas." AC ¶ 23. Because these purported injuries occurred in Kansas and no factors tie the claim to any other state, Kansas law applies here.

### B. The Board of County Commissioners of Ford County Lacks the Authority to Bring a Public Nuisance Claim on Either an Individual or Class Basis

Ford County is acting *ultra vires*. Kansas law authorizes only three governmental entities to bring claims for public nuisance on behalf of its citizens: (1) "the attorney general," on behalf of the entire state; (2) "a county attorney for enjoining such a nuisance within his or her county"; or (3) "a city attorney for enjoining such a nuisance within his or her city." Kan. Stat. § 60-908.

County attorneys in Kansas are independently elected officials who serve terms. *Id.* § 19-701; *Clough v. Hart*, 8 Kan. 487, 494 (1871). But, this case is brought by private plaintiffs' lawyers purporting to represent the Ford County Board of County Commissioners.[31] It was not filed by Kevin Salzman, the duly elected County Attorney for Ford County, who is the *only* authority specified by statute who can assert the claim for Ford County. Kan Stat. Ann. § 60-908; *Drainage Dist. No. 3 v. Riverside Drainage*, 178 P. 433, 434 (Kan. 1919) (district not authorized to bring public nuisance claim that "should be brought in the name of the state, by the county attorney, or the Attorney General"). That is the end of the story and end of the claim.

Ford County also does not have any legal authority whatsoever to represent "all counties, cities, and municipalities" and government entities located "in the United States and its territories," excluding California. *See* AC ¶ 161–63. Government entities may sue only under the laws of their home state, and Ford County has no authority to pursue claims on behalf of non-Kansas government bodies. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, 2015 WL 14047405, at \*7 (E.D. Mich. Apr. 30, 2015) (dismissing class allegations brought on behalf of municipalities other than under the state's laws where the government entity that was a named plaintiff was located); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at \*18 (N.D. Cal. Oct. 2, 2014) (same).[32] As the Kansas Attorney General pointedly demonstrates, Ford County cannot represent other Kansas counties, much less the entire State of Kansas. Dkt. No. 113-1. Other counties in Kansas must be represented by their respective county attorney, and numerous other government entities

---

[31] *See* Ford County Commissioners' Meeting Minutes (Oct. 21, 2024), https://www.fordcounty.net/AgendaCenter/ViewFile/Minutes/_10212024-517 at 99 (County Commissioners, without County Attorney Salzman present, "directed Legal Counsel to enter into contingency agreements with Sharp Law for Oil & Gas and Plastic Waste class action lawsuits").

[32] Separately, Ford County could not represent other states' government entities as states across the country also have laws entrusting only government entity attorneys to litigate such claims. *See, e.g.*, Mo. Rev. Stat. § 56.060; N.Y. County Law § 501.

around the country are subject to "statutory requirements that local state entities must satisfy before being represented by private counsel" like the one representing Ford County here. *In re Auto.*, 2015 WL 14047405, at *7. And the Eleventh Amendment separately prohibits Ford County from representing any State. *See id.* at *4 (citing *Thomas v. FAG*, 50 F.3d 502, 505 (8th Cir. 1995)).

### C.    Ford County's Public Nuisance Claim Fails for Numerous Reasons

Ford County also fails to allege a viable public nuisance claim. Although the state-law label Ford County attaches to its claim may be familiar, the substance and reach of the claim is extraordinary and unprecedented. Indeed, Plaintiffs seek to declare the production, promotion, and sale of lawful products a public nuisance. But public nuisance is a narrow claim that is typically applied only in the "context of a landowner or other person in control of property conducting an activity on his or her land in such a manner as to interfere with the property rights of a neighbor" and "does not apply to cases involving the sale of goods." *Hunter v. J&J*, 499 P.3d 719, 726 (Okla. 2021) (collecting cases). This is because allowing nuisance claims based on the promotion and sale of goods would "stretch the concept of public nuisance far beyond recognition and would create a new and entirely unbounded tort antithetical to the meaning and inherent theoretical limitations of the tort of public nuisance." *In re Lead Paint Litig.*, 924 A.2d 484, 494 (N.J. 2007).

This is particularly true here, where the alleged statements by Defendants are lawful, authorized, and/or mandated by statute. In fact, the alleged statements are the same statements that the State of Kansas, Ford County, and state and municipal governments across the county have made and continue to make. At bottom, Plaintiffs admittedly seek a "50-state solution" to plastic pollution (AC ¶ 7)—but this just illustrates that the issue they allege is the sort of broad societal problem courts have explained are for legislators to address—not public nuisance suits. *Oakland v. BP*, 325 F. Supp. 3d 1017, 1029 (N.D. Cal. 2018); *James v. PepsiCo*, 222 N.Y.S.3d 907, 917 (N.Y. Sup. Ct. 2024) (dismissing public nuisance claim because applying such a theory to punish

defendants for the production or sale of a lawful product would seek to "transform the judiciary into an arm of the legislature"). The AC does not allege a public nuisance for multiple reasons.

1.  Defendants' Lawful Sale of Plastic and Promotion of Recycling Are Authorized and Protected by Law

Ford County does not state a public nuisance claim because the conduct it challenges is authorized by law. Courts have long held that acts "done under authority of law . . . cannot be a nuisance." *Atchison, Topeka & Santa Fe Ry. v. Armstrong*, 80 P. 978, 979 (Kan. 1905); *PepsiCo*, 222 N.Y.S.3d at 914 ("Essential to demonstrating the viability of a public nuisance claim is to show that the product in question is defective or unlawful."); *City of Chicago v. Beretta U.S.A.*, 821 N.E.2d 1099, 1116 (Ill. 2004) (affirming dismissal of public nuisance claim because there is no "public right to be free from the threat that some individuals may use an otherwise legal product . . . in a manner that may create a risk of harm"); *SUEZ v. E.I. du Pont*, 578 F. Supp. 3d 511, 546 (S.D.N.Y. 2022) (collecting cases and finding an "almost absolute rule" that lawful sales of lawful products are not public nuisances); *In re Firearm*, 126 Cal. App. 4th 959, 989 (2005) (holding compliance with firearm laws defeated nuisance theory).

Ford County alleges Defendants created a nuisance because they "encouraged recycling of plastics" by "marketing that plastics were recyclable." AC ¶¶ 76, 208. But the State of Kansas itself has done exactly the same thing, declaring that "it is the policy of the state to . . . [e]ncourage the wise use of resources through development of strategies that . . . recycle materials." Kan. Stat. § 65-3401(e). And the state defines "Recyclables" to include "plastic." *Id.* § 65-3402(r). Consistent with the express policy of the State of Kansas, Dodge City—the county seat of Ford County— likewise advises consumers to recycle plastics.[33] Defendants' alleged recycling statements say the

---

[33] *See* How to Sort your Recyclables, City of Dodge City, Kansas, https://www.dodgecity.org/157/How-to-Sort-your-Recyclables (last visited Mar. 8, 2025).

same thing that the State of Kansas and the largest city in Ford County say to their residents.

Beyond just encouragement, Kansas law actually *mandates* the use of the RIC system and "chasing arrows" logo, which, although not used by Defendants because they do not sell consumer products, Ford County nonetheless also challenges as a nuisance. *See* Section IV.C. Kansas requires all entities distributing or selling any plastic container in Kansas to affix the "nationally recognized code indicating the plastic resin used to produce" the container consistent with the RIC system. Kan. Stat. § 65-3425(b). Failure to comply constitutes a violation punishable by fines of up to $500 per violation. *Id.* § 65-3425(c).[34] Several Kansas government departments and websites use the "chasing arrows" logo. For example, Dodge City uses the logo for its recycling department, which provides plastic recycling resources to city residents.[35] Because the challenged statements are lawful, authorized, and/or mandated by statute, the public nuisance claim fails. Absent a change in course by government actors, "this lawsuit is simply policy idealism" that contradicts the choices of elected public officials. *PepsiCo*, 222 N.Y.S.3d at 916.

Nor could Ford County predicate its public nuisance claim on the production or sale of plastic. Courts have found that non-defective, lawful products—such as Defendants' sale of plastic resins—cannot support a public nuisance claim. *See People v. Sturm*, 761 N.Y.S. 2d 192, 192 (App. Div. 2003); *J&J*, 499 P.3d at 725 ("Applying the nuisance statutes to lawful products . . . would create unlimited and unprincipled liability for product manufacturers."). The same goes for promotion of those lawful products because "public nuisance law" does not extend to the "manufacturing, *marketing*, and selling of lawful products." *J&J*, 499 P.3d at 723 (emphasis

---

[34] As explained below in Section IV.C.1, all of the challenged statements are also lawful because they constitute lobbying efforts protected by the First Amendment. That is yet another reason why Defendants' statements cannot form the basis of Ford County's public nuisance claim.

[35] *See supra* n.8.

added). As the Eighth Circuit explained, allowing nuisance claims to proceed based on the production, promotion, and sale of lawful production would vitiate the boundaries between nuisance and products liability law and create "a monster that would devour in one gulp the entire law of tort." *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993).

## 2. Ford County Does Not Plead Conduct that Is Frequent or Continuous

Ford County's theory rests on public statements certain Defendants allegedly made decades ago. But no Kansas or Tenth Circuit court has found a public nuisance predicated on statements.[36] That is because statements do not constitute "an unreasonable interference with a right common to the general public," which is a required element in a public nuisance action. RESTATEMENT (SECOND) OF TORTS § 821B; *Chicago*, 821 N.E.2d at 1111.[37]

Ford County's public nuisance claim also fails because "[a] single offense, or several isolated offenses, may not constitute a nuisance." *Corbett v. City of Kensington*, 530 P.3d 750, 760 (Kan. Ct. App. 2023). The few challenged statements were made by different entities, at different times, to different audiences, and in different mediums. *Compare* AC ¶ 113 (*Chicago Tribune Earth Day advertisement from 1992 by the Council on Plastic and Packaging in the Environment*), *with id.* ¶ 115 (video from 1994 by the Foodservice Packaging Institute distributed in California schools). These statements are insufficient to constitute a public nuisance. *Corbett*, 530 P.3d at

---

[36] Reaching back decades to impose nuisance liability on Defendants for plastic pollution based on past statements alone is exactly the kind of "severe, disproportionate, and extremely retroactive burden" that the Constitution prohibits. *E. Enters v. Apfel*, 524 U.S. 498, 528, 538 (1998).

[37] Ford County has failed to adequately explain what public right Defendants allegedly interfered with. For example, Ford County claims that it has "a common right to be free from" Defendants' alleged conduct—that is, the alleged deceptive marketing of the recyclability of plastics. AC ¶ 208. This is no different from the individual right not to be defrauded described in *City of Chicago*, 821 N.E.2d at 1115 (distinguishing between individual rights and public rights). But this does not plausibly allege an interference with any recognized public rights: health, safety, peace, comfort, or convenience. *See* RESTATEMENT (SECOND) OF TORTS § 821B. Indeed, a harm that is "collective in nature" is not like the "the individual right that everyone has not to be" "defrauded." *Id.* cmt. g.

760; *Hofstetter v. Myers*, 228 P.2d 522 (Kan. 1951) (finding operation of an asphalt plant did not constitute nuisance because of its relative infrequency where it ran 29 days in a 58 day period).

        3.     <u>No Proximate Cause Links the Alleged Conduct and Ford County's Injury</u>

        "To be actionable, the nuisance complained of must be the proximate cause of the injury and damage for which recovery is sought." *Baldwin*, 468 P.2d 168, 172 (Kan. 1970). Plaintiffs do not connect Defendants' alleged statements in the AC with Ford County's alleged plastic pollution. The AC says nothing to support the theory that the alleged sparse and decades-old statements generally promoting recycling proximately caused an increase in plastic demand, let alone any increase in plastic pollution in Ford County. Indeed, Plaintiffs allege that the purported increased demand for plastic and the plastic pollution crisis began well before the statements, and that demand has increased for decades since. AC ¶¶ 64, 141, 147. Plaintiffs also do not allege how Defendants' statements could have led to more pollution. If anything, promoting recycling should have led to less pollution. As the Kansas state government (among many others) has repeatedly made clear—recycling helps to combat plastic litter.[38] Preventing statements advocating for recycling will result in *less* plastic being recycled, and *more* plastic being disposed of improperly.

        Where, as here, a plaintiff "alleges that Defendants' misrepresentations and deceptive conduct resulted in increased global use of . . . a lawful consumer product . . . which, [plaintiff] says, has caused damage to [its] infrastructure," the alleged harms "are the result of [product usage] by third parties" and thus lack a sufficient nexus to Defendants' alleged conduct to constitute a public nuisance. *Mayor of Balt. v. BP*, 2024 WL 3678699, at *10 (Md. Cir. Ct. July 10, 2024).[39]

---

[38] *E.g.*, *supra* n.9 ("[R]ecycling is the easiest thing [citizens] can do to slow global warming.").

[39] *Ashley Cnty. v. Pfizer*, 552 F.3d 659, 662–63 (8th Cir. 2009) (affirming dismissal public nuisance claim against manufacturers of cold medicines who allegedly fueled a methamphetamine crisis, holding that "totally independent" criminal acts broke the causal chain); *Chicago*, 821 N.E.2d at 1138 (dismissing public nuisance action against gun dealers, as the alleged nuisance resulted from the criminal acts of individuals over whom they have no control); *Sturm*, 761 N.Y.S.2d at 202.

The acts or omissions of consumers, recycling facilities, waste management entities, and countless third parties are all independent, intervening steps that break the causal chain between Defendants' alleged statements and Ford County's purported injury. *Id*.; *Cherry v. Bd. of Cty. Comms.*, 202 Kan. 121 (1968). No one could credibly claim that, when a consumer decides to throw a plastic bottle in the garbage can (as opposed to a recycling bin), Defendants' statements were the cause. *PepsiCo*, 222 N.Y.S. at 914 ("Imposing civil liability on a manufacturer for the acts of a third party seems contrary to every norm of established jurisprudence."). In suing only Defendants and not "all offenders" that have contributed to the alleged nuisance, Plaintiffs engage in "selective prosecution based on a naïve theory," which is at odds with basic proximate cause principles. *Id.*

        4.      <u>Disposal of Plastic Was Not Within Defendants' Control</u>

Public nuisance claims typically cover only actions "performed in a location within the [defendant's] control." *J&J*, 499 P.3d at 724; *accord, e.g.*, *Williams v. Amoco Prod. Co.*, 734 P.2d 1113, 1117 (Kan. 1987) (assessing nuisance claim based on the defendant's alleged "control" over natural gas leaking into the water supply). But "a manufacturer does not generally have control of its product once it is sold." *J&J*, 499 P.3d at 726. Most courts have refused to uphold public nuisance claims premised on how a product is used after it leaves a manufacturer's control. *Id.*; *Ashley Cnty.*, 552 F.3d at 673 (affirming dismissal of public nuisance claim based on marketing and sale of product because subsequent use of the product was not within manufacturer's control); *Philadelphia v. Beretta*, 126 F. Supp. 2d 882, 911 (E.D. Pa. 2000) (explaining courts have refused to extend liability to manufacturers after the product at issue "has left the manufacturer's control").

Here, Ford County's injury is based entirely on harms stemming from alleged improper disposal of plastics by end users. Because those alleged actions occurred *after* the plastics left Defendants' control, they cannot serve as the basis for a public nuisance claim.

## IV.     PLAINTIFFS FAIL TO STATE A VIABLE CONSUMER FRAUD CLAIM

Plaintiffs' Consumer Fraud Claims (Counts 3-17) also fail for several additional reasons.

### A.     Plaintiffs Have Not Satisfied the Rule 9(b) Pleading Standard (Counts 3–17)

The crux of Plaintiffs' Consumer Fraud claims is that Defendants "ma[de] fraudulent, deceptive, and material misrepresentations about the recyclability of plastics sold in the United States" to "artificially increase[] demand and therefore prices of plastic." AC ¶ 218. The Consumer Fraud Claims are thus grounded in fraud and subject to Rule 9(b)'s heightened pleading standard.[40] *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1017 (8th Cir. 2024); FED. R. CIV. P. 9(b). Yet the AC falls far short of pleading the "who, what, where, when, and how of the alleged fraud," as required by Rule 9(b). *Joshi*, 441 F.3d 552, 556 (8th Cir. 2006). For each Plaintiff, the AC states only, in boilerplate fashion, that he or she is a resident of a particular state and that he or she "purchased plastic products" in certain state(s). AC ¶¶ 15–22. Plaintiffs do not identify the quantity or type of plastics they purchased, when they made the purchases and from whom, what they saw or relied on in making their purchases, or how much they paid (or purportedly overpaid) for any of these products. In fact, Plaintiffs do not claim to have ever seen any of the Defendants' alleged statements. Nor do they identify which of the purchased products contained resins allegedly manufactured by Defendants, much less specify which Defendant was responsible for which resin.

To obscure these pleading deficiencies, Plaintiffs resort to group pleading and seek to impute statements made by Defendants or third-party trade associations to other Defendants. But neither tactic salvages Plaintiffs' deficient claims. ***First***, as discussed in Section II.B.1, Plaintiffs' group pleading is insufficient to satisfy Rule 9(b) because it fails to "inform[] each defendant of the nature of his alleged participation in the fraud." *Olin v. Dakota Access, LLC,* 910 F.3d 1072,

---

[40] Plaintiffs' unjust enrichment claim is also subject to Rule 9(b). *Hennessey v. Gap*, 86 F.4th 823, 831 (8th Cir. 2023). As discussed in Section V, Plaintiffs' unjust enrichment claim similarly fails.

1075 (8th Cir. 2018); *see, e.g.*, AC ¶¶ 76, 79, 84, 90.

*Second*, Plaintiffs fail to plead facts sufficient to establish either of the bases upon which statements of a Defendant or third-party trade association could be imputed to another Defendant: that Defendants were in an agency or alter ego relationship. Plaintiffs must plead with particularity the connection between each defendant and the statement it seeks to impute to that defendant. *Southland v. INSpire Ins.*, 365 F.3d 353, 365 (5th Cir. 2004); *Taylor v. Airco*, 503 F. Supp. 2d 432, 446 (D. Mass. 2007) (refusing to impute organization's statements to members where "no evidence of record indicate[d] to what extent each Defendant controlled the contents" of the organization's publication), *aff'd sub nom.*, 576 F.3d 16 (1st Cir. 2009).

Plaintiffs have not alleged facts to establish an agency relationship. They do not allege any Defendant had the power to act on behalf of another Defendant as an agent, that any Defendant acted at the direction and/or control of another Defendant, or that any Defendant had a fiduciary relationship or otherwise had the power to alter legal relations between another Defendant and a third party. *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. 2002); *Master's Transp. v. Rev Grp., Inc.*, 2020 WL 13580661, at *6 (W.D. Mo. Nov. 12, 2020).

Nor have Plaintiffs alleged facts warranting piercing the corporate veil—"an extraordinary measure that should be reserved for exceptional circumstances." *HOK Sport v. FC Des Moines*, 495 F.3d 927, 935 (8th Cir. 2007). The AC lacks any allegation of control—*i.e.*, "domination of finances, policy, and business practice" so that the corporate entity has no existence of its own; that such control perpetuated fraud or a wrong, a violation of a statutory or other positive duty, or an unjust act in breach of Plaintiffs' rights; or that the control and subsequent breach of duty proximately caused Plaintiffs any injury. *A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 836 (E.D. Mo. 2018). Plaintiffs do not allege any Defendant had unilateral control over the association. Plaintiffs

also never allege Defendants have any corporate ties to any other Defendant, let alone that any Defendant had control over another Defendant. AC ¶¶ 24–33. Plaintiffs thus cannot establish that a Defendant used such control to commit fraud, or that such control caused Plaintiffs any harm.

**B.      Plaintiffs Fail to Establish Standing for Certain of the Consumer Fraud Claims (Counts 3–7 & 9–17)**

Many of Plaintiffs' Consumer Fraud Claims fail for other independent reasons. ***First***, Plaintiffs bring fifteen state law Consumer Fraud Claims, but the named Plaintiffs reside or made purchases in only three of those states: California, Florida, and Missouri. Plaintiffs fail to allege *any* connection to the remaining twelve states, let alone one that would confer Article III standing, statutory standing, or jurisdiction for this Court to hear Plaintiffs' claims under those states' consumer protection statutes. *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 934 (8th Cir. 2012); *In re Pre-Filled Propane*, 2016 WL 6963059, at *7; *see also* Sections I and II.F. Accordingly, the Court should dismiss Counts 3, 5, 7, and 9–17 for lack of standing.

***Second***, Plaintiffs do not plead actual reliance and/or causation as required to state a consumer fraud claim under Arkansas, California, Florida, Massachusetts, Missouri, Montana, Nevada, North Carolina, and Vermont law. *In re Gen. Motors Corp. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997).[41] None of the Plaintiffs allege that they personally encountered or relied on any statement by any Defendant about plastics recycling in deciding to purchase any plastics product. AC ¶¶ 61, 84, 92, 98. ***Third***, the Arkansas, Montana, and South Carolina consumer fraud statutes only permit consumers to bring individual actions, so Plaintiffs' class claims under these statutes must be dismissed. Ark. Code § 4-88-113(f)(1)(B); Mont. Code § 30-14-133(1); S.C. Code

---

[41] Ark. Code § 4-88-113(f)(2); *Kwikset v. Sup. Ct.*, 246 P.3d 877, 888 (Cal. 2011); *Rodi v. S. New Eng. Sch. of L.*, 532 F.3d 11, 19 (1st Cir. 2008); *Copper Sands v. Copper Sands Realty, LLC*, 2013 WL 3270430, at *13 (D. Nev. June 26, 2013); *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 227 (N.C. 2013); *Lombardo v. J&J*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

§ 39-5-140; *Fejzulai v. Sam's W.*, 205 F. Supp. 3d 723, 729 (D.S.C. 2016); *Gonzalez v. Am. Honda*, 720 F. Supp. 3d 833, 847 (C.D. Cal. 2024).[42] **Fourth**, claims under the Arkansas, Massachusetts, and South Carolina statutes separately fail because those states bar claims by indirect purchasers. *Indep. Cnty. v. Pfizer*, 534 F. Supp. 2d 882, 888-89 (E.D. Ark. 2008), *aff'd Ashley Cnty.*, 552 F.3d 659; *In re Loestrin*, 410 F. Supp. at 373; *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 763 (E.D. Pa. 2014). Here, Plaintiffs are indirect purchasers as they did not allegedly buy products directly from Defendants. **Fifth**, Plaintiffs have not satisfied the prerequisite under Massachusetts law of sending a demand letter before filing this suit. *Bos. v. Aetna*, 399 Mass. 569, 574 (1987).

## C. Plaintiffs Fail to Plausibly Allege Any Actionable Deception (Counts 3–17)

The Consumer Fraud Claims are governed by the "reasonable consumer" test. *See* Mo. Stat. § 407.025.[43] To state a claim based on an affirmative misrepresentation under each of the Consumer Fraud Claims, Plaintiffs must allege statements "likel[y]" to "mislead a reasonable consumer." *Ellison-Robbins v. Bimbo Bakeries*, 2024 WL 4332049, at *2 (E.D. Mo. Sept. 27, 2024); *Ellis v. Nike*, 2024 WL 1344805, at *3 (E.D. Mo. Mar. 28, 2024).[44] Plaintiffs premise the Consumer Fraud Claims on a few decades-old statements that generally promote recycling. None

---

[42] *See also supra* n.28.

[43] *Moore v. Mack's*, 2017 WL 4350980, at *8 (E.D. Ark. Sept. 29, 2017); *Collyer v. Catalina*, 712 F. Supp. 3d 1276, 1284 (N.D. Cal. 2024); *Saucier v. Countrywide*, 64 A.3d 428, 442 (D.C. 2013); *Piescik v. CVS*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021); *Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 113 (D. Mass. 2022); *Young v. Era*, 513 P.3d 505, 513 (Mont. 2022); *Tepper v. Talent*, 561 F. Supp. 3d 846, 853 (D. Neb. 2021); *Cannuscio v. GEICO*, 2022 WL 22881849, at *5 (D. Nev. Dec. 13, 2022); *Guay v. Sig*, 626 F. Supp. 3d 536, 545 (D.N.H. 2022); *Thornton v. Kroger*, 2022 WL 488932, at *110 (D.N.M. Feb. 17, 2022); *Bumpers*, 747 S.E.2d at 227; *Laccinole v. Gulf*, 2023 WL 157719, at *4 (D.R.I. Jan. 11, 2023); *Doe 9 v. Varsity Brands, LLC*, 2023 WL 4113198, at *11 (D.S.C. June 21, 2023); *Lofts v. Strategies Floor*, 224 A.3d 116, 127 (Vt. 2019).

[44] Under Missouri and Arkansas law, the allegedly deceptive statements are not actionable where, as here, they were not "made in connection with" the sale of a product. Mo. Rev. Stat. § 407.020; Ark. Code Ann. § 4-88-108. Defendants do not sell consumer products that they manufacture with their plastic resin pellets, and thus any statements regarding recycling could not have been made "in connection with" the sale of a product that Plaintiffs allegedly purchased.

of these statements promotes or even relates to the sale of a specific consumer good. As detailed below, Plaintiffs' claims fail as a matter of law because these statements are protected by the First Amendment, are specifically authorized by the FTC's Green Guides, and are subjective, accurate, and consistent with the government's endorsement of recycling. To find these statements deceptive would be to declare the government's own recycling mandates and statements unlawful.

### 1. Lobbying Efforts Are Protected Under the First Amendment

Plaintiffs allege that statements made by Defendants, trade associations, industry organizations, and other third parties were attempts to influence the legislative process regarding plastics and recycling. *See, e.g.*, AC ¶¶ 87–90. But as discussed above in Section II.C, lobbying efforts are protected under the First Amendment and the *Noerr-Pennington* doctrine and cannot be a basis for liability, including for Plaintiffs' Consumer Fraud Claims.

### 2. Statements Mandated by the Government Are Protected

Several of the statements Plaintiffs characterize as misleading are required by most states' plastics and recycling regimes. For example, Plaintiffs claim the "chasing arrows" logo and the RIC system deceives consumers as to the recyclability of plastics. AC ¶¶ 91–95. But as the AC itself concedes, thirty-nine states *require* plastics manufactures to use this logo and system. *Id.* ¶ 103. And various governmental entities—including in Missouri and Kansas—use this logo and system.[45] *Id.* Under the consumer fraud statutes of Arkansas, Florida, Massachusetts, Rhode Island, and South Carolina (Counts 3, 6–7, 15–16), actions that are required, authorized, or in compliance with other state or federal laws cannot form the basis for a claim.[46]

The challenged statements are also entirely consistent with the government's mandates and

---

[45] *Supra* n.5.
[46] Ark. Code Ann. § 4-88-101(3); Fla. Stat. § 501.212(1); Mass. Gen. Laws Ann. ch. 93A, § 3; N.M. Stat. Ann. § 57-12-7; R.I Gen. Laws § 6-13.1-4(a); S.C. Code Ann, § 39-5-40(a).

statements regarding recycling. Plaintiffs allege no facts to the contrary. Governmental entities have made far more declarative and specific statements regarding the efficacy and impact of recycling. Notably, Plaintiff Ford County's own government center (Dodge City) actively encourages its residents "that recycling is the easiest thing they can do to slow global warming." *See supra* n.9. For the challenged statements to be deceptive, the Court must find that the decades of governmental recycling mandates and statements are unlawful.

### 3. No Reasonable Consumer Would Be Misled by the Challenged Statements

Despite claims of a decades-long fraudulent campaign, Plaintiffs identify only a few allegedly deceptive statements. *See infra* at 7. However, none of these statements are actionable and none would mislead a reasonable consumer.[47]

***First***, the Recycling Initiative Statements are too subjective, and Plaintiffs have pled no facts establishing falsity or deception.[48] The statements are not objective or "measurable," and lack any "empirical benchmark." These statements contain no remotely "specific" or "quantifiable" claim on recycling rates. *See Appliance Recycling Ctrs. v. JACO*, 378 F. App'x 652, 654 (9th Cir. 2010) (deeming statements describing recycling method as "a 'unique' system with 'unprecedented' results" not actionable as they did not concern "specific or absolute characteristics"); *In re Mun.*, 429 F. Supp. 3d 647, 656 n.4 (D. Minn. 2019) (finding statements that a tar coating for driveways was "superior" and complied with industry standards inactionable). They are thus too "vague" to be actionable. *Am. Italian v. Pasta*, 371 F.3d 387, 391 (8th Cir. 2004).

---

[47] Under the MMPA, a plaintiff must "establish" that "he acted as a reasonable consumer would in light of all circumstances." Mo. Rev. Stat. § 407.025.1(2)(a). Here, Plaintiffs have not done so. Missouri law does not excuse their failure to educate themselves "where [they] ha[d] the opportunity to read something but cho[]se not to do so." *Bell v. Annie's Inc.*, 2023 WL 3568623, at *3 (E.D. Mo. May 18, 2023).

[48] *See* AC ¶ 85 (quoting Time advertisement); *id.* ¶ 105 (quoting *Chicago Tribune* ad); *id.* ¶ 107 (quoting educational materials distributed by California state government).

Further, the AC confirms the statements are indeed accurate. AC ¶¶ 98–99, 103. Plaintiffs repeatedly explain that many plastic products are ultimately recycled. *See, e.g.*, *id.* ¶ 45 (explaining that there are "viable markets" for PET and HDPE). Moreover, these statements do not even relate to the recyclability of a particular product—much less suggest the ultimate recycling rate for plastics industry-wide. *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *13 (N.D. Ill. Sept. 13, 2022) (dismissing where defendant "never represented anything about the likelihood of recycling"); *Swartz*, 2023 WL 4828680, at *3 (promoting recyclability is not "a promise that an object will actually be recycled"). Thus, the Recycling Initiative Statements are not actionable.

*Second*, the Recyclability Statements—relating to the recyclability of certain types of products—are both foreclosed by state law and not deceptive. Regarding the former, Arkansas, Florida, Massachusetts, New Mexico, Rhode Island, and South Carolina law provide that actions permitted by other state or federal law cannot support a consumer fraud claim.[49] Here, all of these states (except Arkansas) have codified or expressed deference to the FTC's Green Guides as law, which specifically authorize the recyclable claims here.[50] 16 CFR § 260.12(b)(1) (permits plastic marketers to "make unqualified recyclable claims" of recyclability as long as recycling facilities are available to a certain percentage of consumers where the plastics are sold).[51] *Id.* Plaintiffs plead no facts indicating that any of the relevant jurisdictions fails to meet the FTC's recycling facilities threshold. Thus, the claims brought under Florida, Massachusetts, New Mexico, Rhode Island, and South Carolina law (Counts 6–7, 13, 15–16) fail for the Recyclability Statements.

---

[49] *See* Ark. Code § 8-9-302; Fla. Stat. § 501.212(1); Mass. Gen. Laws Ann. ch. 93A, § 3; N.M. Stat. Ann. § 57-12-7; R.I Gen. Laws § 6-13.1-4(a); S.C. Code Ann, § 39-5-40(a).

[50] *See* D.C. Code § 28-3901(d); Fla. Stat. § 501.204(2); Mo. Code Regs. tit. § 15 CSR 60-8.020(1)(A); Mass. Gen. Laws ch. 93A, § 2; Mont. Code § 27–2–2116; N.H. Rev. Stat. § 358-A:13; N.M. Stat. § 57-12-4; S.C. Code § 39-5-20(b); Vt. Stat. tit. 9, § 2453(b); Cal. Bus. & Prof. Code § 17580.5; R.I. Gen. Laws § 6-13.3-1; *Marshall v. Miller*, 276 S.E.2d 397, 399 (N.C. 1981).

[51] And at least one federal statute defines plastic as a recyclable material. *See* 42 U.S.C. § 9627(b).

Additionally, there is nothing deceptive about the Recyclability Statements as evidenced by the Green Guides. Recyclable claims are not deceptive if a material or product merely "can be collected, separated, or otherwise recovered from the waste stream through an established recycling program"—the material or product need not actually be recycled. 16 CFR § 260.12(a). Further, courts have consistently held that describing plastic as "recyclable" only indicates that it "can be recycled," not that it in fact will be recycled, and not even that it "probably will be recycled" or is "easy to recycle." *Curtis*, 2022 WL 4182384, at *14; *Swartz v. Coca-Cola Co.*, 2022 WL 17881771, at *1 (N.D. Cal. Nov. 18, 2022) (a reasonable consumer would understand that describing a bottle as "100% recyclable" is not "a promise that [the bottle] will actually be recycled"); *Lizama v. H&M LP*, 2023 WL 3433957, at *5 (E.D. Mo. May 12, 2023) (no reasonable consumer would understand statement that a product was made from "more sustainable materials" to mean the product was "inherently 'sustainable'"). This is because, as Plaintiffs concede, there are a host of reasons why recyclable plastics may not be recycled.[52] *Curtis*, 2022 WL 4182384, at *13 ("[R]ecyclable" "is about what can happen," "not a promise about the state of the recycling industry," nor "a prediction of what is likely to happen.").

To support a consumer fraud claim on a statement that a product is "recyclable," Plaintiffs would have to allege that products advertised as recyclable are not, in fact, recyclable. *Id*. But the AC does not allege the products Plaintiffs allegedly purchased—or Defendants' plastic resin pellets—are not recyclable. To the extent these products are not ultimately recycled, that is unfortunate—but it does not create or establish deception by Defendants. *Id.* at *14. No reasonable consumer would be misled by these recyclability statements.

---

[52] *See* AC ¶¶ 49–51 (sorting), 70–71 (economic), 73 (contamination); *Swartz*, 2022 WL 17881771, at *1 (dismissing claims that "100% recyclable" label was misleading where complaint itself explained that certain issues prevented otherwise recyclable products from being recycled).

Plaintiffs' allegations concerning recycling rates also illustrate that information concerning plastics recycling has always been "widely available and readily accessible." *Lizama*, 2023 WL 3433957, at *7. Thus, although the challenged statements do not even suggest that most plastic products are ultimately recycled, even if they did, a "reasonable consumer[]" could "independently verify whether these representations are consistent with other, publicly available data." *Id.* Considering the extensive recycling "information . . . available," no reasonable consumer would be misled by these statements. *Ellis*, 2024 WL 1344805, at *4; *Lizama*, 2023 WL 3433957, at *7.

**Third**, as to the Aspirational Statement, Plaintiffs allege that in 1991, trade associations "heavily publicized . . . commitments" of reaching a twenty-five percent recycling rate by 1995. AC ¶ 104. As the article Plaintiffs cite makes clear, however, this commitment was a "goal"—and a "goal" or other "forward looking" statement cannot be deceptive as a matter of law. *Zanani v. Savad*, 217 A.D.2d 696, 697 (2d Dep't 1995) ("something which is hoped or expected to occur in the future" is inactionable); *Rochester v. Monsanto*, 883 F. Supp. 2d 835, 882 (E.D. Mo. 2012). No reasonable consumer would mistake this "goal" for a "guarantee." *Nivia v. Nationstar*, 2014 WL 4146889, at *6 (S.D. Fla. Aug. 21, 2014); *Guerrero v. Henkel*, 2024 WL 2769745, at *7 (E.D. Mo. 2024). Moreover, this statement demonstrates the implausibility of Plaintiffs' allegations. After all, the trade associations publicly announced most plastics were not recycled. *N.Y. v. Exxon Mobil Corp.*, 2025 WL 209843, at *11 (N.Y. Sup. Ct. Jan. 14, 2025) (dismissing claims regarding allegedly deceptive statements on impact of fossil fuels on climate change where complaint conceded that connection between fossil fuels and climate change was public information).

4. <u>Plaintiffs Fail to Allege an Actionable Omission (Counts 3–4, 8)</u>

Plaintiffs only allege an omission claim under Arkansas, California, and Missouri law. Each claim fails for independent reasons. AC ¶¶ 226, 237, 265. To state an omission claim under these statutes, the allegedly omitted fact must be "material." *See Riddell v. GM LLC*, 2024 WL

44

2077559, at *7 (E.D. Mo. May 9, 2024).[53] Here, Plaintiffs allege that Defendants deceptively omitted the rates at which plastics were recycled. *See* AC ¶ 218. However, Plaintiffs have pled no facts to establish that the *rates at which specific plastics were recycled* is what motivated their purchases. Indeed, Plaintiffs' motivation was to purchase the *underlying* product packaged in plastic. *See id.* ¶¶ 34–42 (describing plastic products such as soft drink bottles and pill bottles). Thus, all of Plaintiffs' omission claims fail on this basis.

Plaintiffs' omissions claims under California and Arkansas law separately fail because they do not allege facts with the specificity required by Rule 9(b) to establish that a Defendant had a duty to disclose recycling rates. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 575 (N.D. Cal. 2019). **Under California law**, a duty to disclose arises only where the omission: (1) "relates to a safety hazard"; or (2) is "material, central to the products function." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022). Here, Plaintiffs do not allege that the purportedly omitted fact—that less than ten percent of plastics are recycled—either relates to a safety hazard or is central to the products' function. For example, the rate plastic water bottles are recycled at is wholly irrelevant to the function of the water bottle—*i.e.*, to hold liquid. **Under Arkansas law**, a duty to disclose only exists "where there is an established relationship between the parties such as a contractual relationship or a fiduciary relationship." *White v. Volkswagen Grp. of Am., Inc.*, 2013 WL 685298, at *9 (W.D. Ark. Feb. 25, 2013). Plaintiffs allege no relationship with any Defendant, nor could they as Defendants do not manufacture any consumer products.

Their omission claims under California and Missouri law also fail because Plaintiffs do not establish "the average consumer would be unlikely to know or be able to research" the omitted

---

[53] *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021); *Edwards v. Camden Operations, LLC*, 2018 WL 3478905, at *3 (W.D. Ark. July 19, 2018).

fact. *Tucker v. Gen. Motors*, 58 F.4th 392, 398 (8th Cir. 2023); Mo. Rev. Stat. § 407.025.1(2);

*Milman v. FCA*, 2019 WL 3334612, at *6 (C.D. Cal. Apr. 15, 2019). As mentioned, Plaintiffs rely

on decades of public information on the alleged limitations of recycling, including the very

recycling data Plaintiffs claim that Defendants omitted. AC ¶¶ 66, 68, 70–71, 74. Accordingly, to

the extent they were not already, the average consumer could have easily learned of the limitations

of recycling, and Plaintiffs are not excused from failing to educate themselves "where [they] ha[d]

the opportunity to read something but cho[]se not to do so." *See Bell*, 2023 WL 3568623, at *4.

## V.    PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM (COUNT 46)

Plaintiffs fail to plead an unjust enrichment claim for several independent reasons.

Plaintiffs assert an "unjust enrichment claim" on behalf of state subclasses, but do not identify the

unjust enrichment laws of any particular jurisdiction that they seek to invoke. AC ¶¶ 513–20. The

failure to identify "any particular jurisdiction to which allegations should apply . . . is fatal." *In re*

*Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088 (S.D. Cal. 2017). Courts

routinely dismiss unjust enrichment claims for "failure to specify the particular state law under

which [plaintiffs] intend to proceed." *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust*

*Litig.*, 2013 WL 5503308 at *8 (D.N.J. Oct. 2, 2013).

Plaintiffs also cannot state an unjust enrichment claim under Arkansas, California,

Massachusetts, and New Hampshire law as these states have held it is not an independent cause of

action.[54] Further, Plaintiffs cannot maintain an unjust enrichment claim under California, Florida,

Massachusetts, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North

Carolina, and South Carolina law, because each of these states require Plaintiffs to plead an

---

[54] *Foreman v. Haliron*, 2021 WL 5139519, at *6 (W.D. Ark. Nov. 3, 2021); *Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1055 (S.D. Cal. 2023); *Robert E. Ricciardelli v. Home Depot*, 679 F. Supp. 2d 192, 210 (D. Mass. 2010); *OneSky v. Sullivan*, 2012 WL 124739, at *12 (D.N.H. Jan. 17, 2012).

inadequate remedy at law, which Plaintiffs have failed to do here.[55]

Lastly, even if Plaintiffs had identified Missouri law as the applicable law for their unjust enrichment claim, the claim would fail. As an initial matter, the Court cannot apply the law of Missouri to transactions in other states without violating the Dormant Commerce Clause. *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (finding state law cannot apply to transactions that occur outside of state's borders without "extraterritorial effects" on interstate commerce in violation of the Dormant Commerce Clause). Further, Plaintiffs do not allege any facts demonstrating how Defendants benefitted from the alleged conspiracy. For example, there are no allegations that Defendants sold more plastic resin, sold plastic resin at a higher price, or that any demand or pricing increase impacted Defendants as opposed to the entities that actually manufactured and sold plastic products to consumers. *See* AC ¶¶ 171–74, 185–87. Nor do Plaintiffs allege that Defendants received any benefit from Plaintiffs, nor could they since Plaintiffs do not allege they purchased anything from Defendants. *Wiles v. Sw. Bell Tel.*, 2010 WL 1463025, at *4 (W.D. Mo. Apr. 13, 2010) ("[A] plaintiff must allege that a benefit was conferred on the defendant by that particular plaintiff."). The claim is also barred under the economic loss doctrine, which prohibits recovery for tort claims that assert purely economic damages such as higher prices, as alleged here. *Hammack v. Harbor Freight*, 2022 WL 14225017, at *4 (W.D. Mo. Oct. 24, 2022).

---

[55] *Cho v. Hyundai*, 636 F. Supp. 3d 1149, 1173 (C.D. Cal. 2022); *Bule v. Garda*, 2014 WL 3501546, at *3 (S.D. Fla. July 14, 2014); *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005); *May v. Makita*, 2023 WL 417487, at *6 (E.D. Mo. Jan. 26, 2023); *Mont. v. Trinity*, 473 P.3d 1009, 1012 (Mont. 2020); *Pilot v. Hofarth*, 550 N.W.2d 27, 33 (Neb. 1996); *Korte v. State on Rel. of Bd. of Regents of Nev.*, 492 P.3d 540, 541 (Nev. 2021); *Mangiardi v. Dewey*, 2013 WL 1856338, at *3 (D.N.H. Apr. 30, 2013) *In re Santa Fe Nat. Tobacco Co. Liab. Litig.*, 288 F. Supp. 3d 1087, 1193 (D.N.M. 2017); *Embree Const. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992); *Melton v. Carolina Power & Light*, 2012 WL 2401635, at *2 (D.S.C. June 25, 2012).

## VI.  ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED (ALL COUNTS)

Dismissal is appropriate at the pleading stage when "the complaint itself establishes that the claim is time-barred." *Illig v. Union*, 652 F.3d 971, 976 (8th Cir. 2011). Plaintiffs' claims have the following statutes of limitations: 3–6 years for the Antitrust Claims, which began to accrue when Defendants entered into the alleged conspiracy;[56] 2 years for Ford County's public nuisance claim,[57] which began to accrue when the nuisance was first discoverable;[58] and 2–10 years for the Consumer Fraud Claims and unjust enrichment claim, which began to accrue upon the purchase of plastic products.[59] Plaintiffs' claims all accrued decades ago and are now time-barred.

Even being charitable and assuming the conspiracy began in 1990 (the latest date it is alleged to have begun), the Antitrust Claims are time-barred because the AC was filed ***thirty-five years*** later. Similarly, the public nuisance claim is time-barred because the pollution underlying the claim allegedly began decades ago. AC ¶ 66 ("By the end of the [1960s] and into the early 1970s, plastics were identified as a key part of the developing solid waste crisis."). And because

---

[56] 15 U.S.C. § 15(b); Ariz. Rev. Stat. § 44-1410; Cal. Bus. & Prof. Code § 16750.1; Colo. Rev. Stat. Ann. § 6-4-119; Conn. Gen. Stat. § 35-40; D.C. Code § 28-4511; Haw. Rev. Stat. Ann. § 480-24; 740 Ill. Comp. Stat. 10/6; Iowa Code § 553.16; Kan. Stat. § 60-512; Me. Rev. Stat. Ann. Tit. 14 § 752; Md. Code Ann., Com. Law § 11-209; Mich. Comp. Laws § 445.781; Minn. Stat. Ann. § 325D.64; Miss. Code § 15-1-49; Neb. Rev. Stat. § 59-829; Nev. Rev. Stat. § 598A.220; N.H. Rev. Stat. § 356:12; N.M. Stat. § 57-1-12; N.Y. Gen. Bus. Law § 340; N.C. Gen. Stat. § 75-16.2; N.D. Cent. Code § 51-08.1-10; Or. Rev. Stat. § 646.800; S.D. Codified Laws § 37-1-14.4; Tenn. Code § 47-25-104; Utah Code § 76-10-3117; W. Va. Code §47-18-11; Wis. Stat. § 133.18.

[57] K.S.A. 60-513. All Kansas based claims are also barred by the Kansas ten-year statute of repose. *Black v. Union Pac.*, 2024 U.S. Dist. LEXIS 141907, at *6 (Kan. D. Ct. Aug. 8, 2024).

[58] The date of accrual for public nuisance claims depends on if the nuisance is continuing or permanent in nature. *Compare Black*, 2024 U.S. Dist. LEXIS 141907, at *24 (continuing nuisance creates new cause of action with each injury), *with Bowen v. City of Kansas City*, 231 Kan. 450 (1982) (finding plaintiff must bring a claim for permanent nuisance within two years of when the first loss occurred). Here, the alleged nuisance is permanent. AC ¶¶ 141–43, 145, 209(c).

[59] Ark. Code § 4-88-115; Cal. Bus. & Prof. Code § 17208; D.C. Code § 12–301; Fla. Stat. § 95.11(3); Mass. Gen. Laws 260, § 5A; Mo. Stat. § 516.120; Mont. Code § 27–2–211; Neb. Rev. Stat. § 59-1612; Nev. Rev. Stat. § 11.190(2)(d); N.H. Rev. Stat. § 508:4; N.M. Stat. § 37-1-4; N.C. Gen. Stat. § 75-16.2; 9 R.I. Gen. Laws § 9-1-13; S.C. Code § 39-5-150; Vt. Stat. tit. 12, § 511.

any of Defendants' allegedly deceptive statements were made decades ago, AC ¶¶ 78–120, the statute of limitations on the Consumer Fraud or unjust enrichment claims expired long ago.[60]

Plaintiffs cannot save their untimely claims by relying on fraudulent concealment tolling or arguing that Plaintiffs could not have discovered, that "most plastics were not recyclable." AC ¶¶ 156–59. To invoke these doctrines, Plaintiffs must plead Defendants' fraudulent conduct under Rule 9(b)—which they fail to—and also demonstrate that Defendants actively tried to conceal information from consumers. *Summerhill v. Terminix*, 637 F.3d 877, 880 (8th Cir. 2011). Plaintiffs' formulaic recitation of the tolling elements is inadequate. To invoke fraudulent concealment, Plaintiffs must plead: (1) an affirmative misrepresentation; (2) actual concealment; and (3) due diligence to discover their claims. Plaintiffs have failed to plead fraudulent concealment, and their failure to do so also prevents the discovery rule from tolling. *Ridder v. Hibsch*, 94 S.W.3d 470, 475 (Mo. Ct. App. 2003).

Plaintiffs do not allege "an act of affirmative misrepresentation over and above the acts creating the cause of action"—that is, a misrepresentation separate and apart from the alleged conspiracy or challenged statements. *Ripplinger v. Amoco Oil Co.*, 916 F.2d 441, 442 (8th Cir. 1990). While Plaintiffs allege that Defendants misrepresented that "plastic products" can be recycled, at best, any such misrepresentation forms the basis of the conspiracy or fraud *itself*—and therefore, cannot also be an act "over and above" it. *Id.*; *New Prime, Inc. v. Eaton Corp.*, 2017 WL 5992466, at *3 (W.D. Mo. Mar. 16, 2017) (Bough, J.) (dismissing Sherman Act claims).

Plaintiffs also do not sufficiently plead Defendants took affirmative steps to conceal the

---

[60] The only challenged statements allegedly occurring more recently were by NAPCOR. *See* AC ¶¶ 150–52. However, Plaintiffs do not allege any affiliation between Defendants and NAPCOR and NAPCOR's members are PET container manufacturers and distributors, *not* resin manufacturers like Defendants. *See id.* ¶ 150.

conspiracy or the purported truth. *See In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1023 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999); *E. Maine Baptist*, 2007 WL 927760 at *4 (E.D. Mo. Mar. 26, 2007). Indeed, the AC, which relies exclusively on *public statements*, suggests the opposite. AC ¶¶ 93–94, 99–104. "It is difficult to reconcile the Plaintiffs' belief that Defendants conducted this conspiracy via public statements with [the] assertion that Defendants were also concealing it." *In re Pork*, 495 F. Supp. 753, 774 (D. Minn. 2020) (rejecting tolling theory).

Lastly, Plaintiffs do not allege facts establishing that they exercised due diligence to discover their claims. Plaintiffs' assertion that they could not have discovered the conspiracy or purported truth is insufficient. *Huffman v. Credit Union*, 2013 WL 1121268, at *4 (W.D. Mo. Mar. 18, 2013). The AC alleges decades of *publicly available* information regarding the limitations of recycling and the plastic pollution crisis. AC ¶¶ 66, 68, 70–71, 74. Plaintiffs also allege that Defendants created trade associations in the 1980s to combat information from the government, which similarly documented the limitations of recycling in great detail. *Id.* ¶¶ 85, 87, 89–95, 99, 105. Given the volume of public information available over several decades, any consumer (including Plaintiffs) could have reasonably discovered information about the availability and rates of recycling. Thus, Plaintiffs' own failure to exercise reasonable diligence dooms their tolling arguments. *Summerhill*, 637 F.3d at 881 (no fraudulent concealment where plaintiff "fail[ed] to allege when and how he discovered [the] alleged fraud"); *In re Milk*, 84 F. Supp. 2d at 1024–25 (no fraudulent concealment where plaintiffs provided "[n]o explanation" of the "steps [they] used to discover their claim" and failed to explain "why the facts" "were not available to them" earlier).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiffs' AC in its entirety with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: March 10, 2025

Respectfully submitted,

By:  */s/ William F. Ford*

Thomas P. Schult, MO Bar # 29986
Jeffrey D. Morris, MO Bar # 45243
Lauren Tallent, MO Bar # 72304
Courtney A. Kroeger, MO Bar # 77213
**BERKOWITZ OLIVER LLP**
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
tschult@berkowitzoliver.com
jmorris@berkowitzoliver.com
ltallent@berkowitzoliver.com
ckroeger@berkowitzoliver.com

Joshua D. Dick (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 393-8200
jdick@gibsondunn.com

Theodore J. Boutrous Jr. (admitted *pro hac vice*)
Christopher D. Dusseault (admitted *pro hac vice*)
Perlette Michèle Jura (admitted *pro hac vice*)
Bradley J. Hamburger (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
tboutrous@gibsondunn.com
cdusseault@gibsondunn.com
pjura@gibsondunn.com
bhamburger@gibsondunn.com

***Attorneys for Defendant Chevron U.S.A. Inc.***

Kara T. Stubbs MO# 43414
**BAKER STERCHI COWDEN & RICE LLC**
2400 Pershing Road, Suite 500

William F. Ford (MO #35116)
bill.ford@lathropgpm.com
Richard N. Bien (MO #31398)
richard.bien@lathropgpm.com
Emma C. Halling (MO #75986)
emma.halling@lathropgpm.com
Grant A. Harse (KS #001043)
grant.harse@lathropgpm.com
Brody Sabor (MO #73421)
brody.sabor@lathropgpm.com
**LATHROP GPM LLP**
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
Telephone: (816) 292-2000

David J. Lender (admitted Pro Hac Vice)
david.lender@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

David R. Singh (Pro Hac Vice to be filed)
david.singh@weil.com
Morgan MacBride (Pro Hac Vice to be filed)
Morgan.macbride@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000

***Attorneys for Defendant Exxon Mobil Corporation***

Robert J. Hoffman MO# 76565
Robert M. Thompson MO# 38156
Grace E. Martinez MO# 70921
**BRYAN CAVE LEIGHTON PAISNER**
One Kansas City Place
1200 Main Street, Suite 3800
Kansas City, MO 64105
Phone: 816-374-3229
Fax: 816-374-3300
Bob.hoffman@bclplaw.com
Rmthompson@bclplaw.com
Grace.martinez@bclplaw.com

Kansas City, MO 64108
Phone: 816-471-2121
Fax: 816-472-0288
Stubbs@bakersterchi.com

Nader R. Boulos, P.C. (admitted pro hac vice)
Daniel E. Laytin, P.C. (admitted pro hac vice)
Jonathan N. Adair (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Phone: 312-862-2000
Fax: 312-862-2200
Nader.boulos@kirkland.com
Daniel.laytin@kirkland.com
Jonathan.adair@kirkland.com

*Counsel for Defendant DuPont de Nemours,*
*Inc.*

David L. Anderson (admitted *pro hac vice*)
dlanderson@sidley.com
Sheila A.G. Armbrust (admitted *pro hac vice*)
sarmbrust@sidley.com
David A. Goldenberg (admitted *pro hac vice*)
dgoldenberg@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Zachary J. Parker (SBN 71120)
zparker@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000

*Attorneys for Defendant American*
*Chemistry Council, INC.*

Michael E. Scoville (Admitted Pro Hac Vice)
**MCGUIREWOODS LLP**
188 16th Street, Suite 500
Black Lives Matter Plaza
Washington, DC 20006

Nader R. Boulos, P.C. (admitted pro hac vice)
Daniel E. Laytin, P.C. (admitted pro hac vice)
Jonathan N. Adair (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Phone: 312-862-2000
Fax: 312-862-2200
Nader.boulos@kirkland.com
Daniel.laytin@kirkland.com
Jonathan.adair@kirkland.com

Matthew J. Blaschke (Pro Hac Vice to be
filed)
mblaschke@kslaw.com
Bailey J. Langner (Pro Hac Vice to be filed)
blangner@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*Counsel for Defendants Dow Inc. and*
*The Dow Chemical Company*

Tristan L. Duncan (MO #39525)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Tel: 816-474-6550
Fax: 816-421-5547
Email: tlduncan@shb.com

Daniel B. Rogers (FL #0195634)
**SHOOK, HARDY & BACON L.L.P.**
Citigroup Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-358-5171
Fax: 305-358-7470
Email: drogers@shb.com

*Attorneys for Defendant Chevron Phillips*
*Chemical Company LP*

Telephone: (202) 828-2812
Facsimile: (202) 828-2980
mscoville@mcguirewoods.com

Gregory J. DuBoff (Admitted Pro Hac Vice)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1154
Facsimile: (804) 775-2054
gduboff@mcguirewoods.com

Karrie J. Clinkinbeard (Bar ID 51413)
Brian M. Nye (Bar ID 69545)
**ARMSTRONG TEASDALE LLP**
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 54108-2617
Telephone: (816) 221-3420
Facsimile: (816) 221-0786
kclinkbinbeard@atllp.com
bnye@atllp.com

*Attorneys for Defendant Eastman Chemical
Company*

Richard Godfrey (*pro hac vice*)
richardgodfrey@quinnemanuel.com
R. Allan Pixton (*pro hac vice*)
allanpixton@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Booker T. Shaw, #255480 MO
bshaw@thompsoncoburn.com
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis, MO 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

*Attorneys for Celanese Corporation*

G. Edgar James MO# 49585
James M. Humphrey IV MO# 50200
4435 Main Street, Suite 910
Kansas City, MO 64111
Telephone: +1.816.623.0544
Telephone: +1.816.631.0669
ejames@jamessobba.com
jhumphrey@jamessobba.com

David C. Kiernan (admitted *pro hac vice*)
Craig E. Stewart (admitted *pro hac vice*)
Emily F. Knox (admitted *pro hac vice*)
**JONES DAY**
555 California Street, 26th Flr.
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700
dkiernan@jonesday.com
cestewart@jonesday.com
egoldbergknox@jonesday.com

Nicole M. Perry (admitted *pro hac vice*)
J. Bruce McDonald (admitted *pro hac vice*)
Andrew M. Ryngaert (admitted *pro hac vice*)
**JONES DAY**
717 Texas, Suite 3300
Houston, TX 77002.2712
Telephone: +1.832.239.3939
Facsimile: +1.832.239.3600
nmperry@jonesday.com
bmcdonald@jonesday.com
aryngaert@jonesday.com

*Attorneys for Defendant LyondellBasell
Industries, N.V.*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing was electronically filed with the Court this 10th day of March, 2025, and

served via the Court's ECF system upon all counsel of record.


/s/ Richard N. Bien
An Attorney for Defendant ExxonMobil
Corporation